## THE STATE v. THOMAS BROWN.

On a trial for perjury, the prosecuting attorney, after opening the case on the merits and being followed by the counsel for the prisoner, discovered a defect in the indictment, and moved the court for leave to enter a *nolle prosequi*, which was granted, and the jury was discharged and the prisoner remanded to jail. Another indictment having been found against the prisoner for the same offence; *Held*, that no verdict of guilty or not guilty having been rendered, there was no trial; and that the entering of the *nolle prosequi*, and the discharge of the jury without the consent of the prisoner, could not support a plea of *auterfoits acquit*. *Per Curiam.* To render the plea of a former acquittal a bar, it must be a legal acquittal, by judgment upon trial, for substantially the same offence, by a verdict of a petit jury.

Where in a prosecution for perjury, the indictment charges that the perjury consisted in the prisoner's falsely swearing that, "*shortly after* the assault and battery committed by P. on the body of D., M. took the said D. by the collar, threw him down and kicked him;" and negatives the truth of the oath by averring that, "in truth and in fact the said M., *after* the assault and battery committed by P. upon the body of the late D., did not take the said D. by the collar, nor throw him down, nor kick him, nor commit any battery on him," it is sufficient. It was not material to the issue to negative any assault or violence to the person of D. *anterior* to the assault and battery committed by P.

APPEAL from the Criminal Court of the First District, *Canonge*, J.

*Preston*, Attorney General, submitted the case on behalf of the State, without argument.

*Sever*, for the appellant.

JOHNSON, J. In April of the present year, the grand jury of the First District, presented a bill of indictment for perjury against the defendant, who, on his arraignment, pleaded not guilty, and the trial progressed until the argument was opened on the merits to the jury by the district attorney, who was followed in the defence by J. G. Sever, Esq. At this stage of the proceedings the district attorney, discovering a flaw in the indictment, moved the court for permission to enter a *nolle prosequi*, which being granted, the jury were discharged from the further consideration of the case, and the accused was remanded to prison. A few days after, the grand jury presented another bill of indictment for the same offence against the defendant. On this new bill he was tried and convicted; and two assignments of error, filed by counsel in this court are relied on, to support the appeal; the first of which is, that the first prosecution was, in contemplation of law, a trial, and the entering of the *nolle prosequi* at the time it was entered, and the discharge of the jury without the consent of the defendant, were equivalent to an acquittal, which barred any subsequent trial for the same offence. This objection we are to consider as in the nature of a special plea in bar, which regularly

ought to have been interposed in the court of the first instance; but we can see no good reason for denying to the accused the full benefit of a discussion of the question in its present condition. To sustain the position, the fifth article of the amendments to the constitution of the United States is invoked, which contains this provision; "Nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb." This constitutional prohibition is a re-affirmance of a *magna charta* maxim of the common law, from which its true meaning has been sought by enlightened jurists, and is now settled, as we understand it, to mean only, that *no man shall be tried a second time for the same offence, after a trial by a competent and regular jury upon a good indictment, whether the verdict be one of acquittal or conviction.* Vide *The People* v. *Goodwin,* Wheeler's Criminal Cases. *United States* v. *Pedro Gibert and others,* 2 Sumner's R. 19. What then is the test by which we must ascertain and determine whether a person has been once tried? The answer, as it appears to us, is, that it can only arise on a plea of *auterfoits acquit,* or on a plea of *auterfoits convict;* and that *auterfoits acquit* or *convict* is a good and valid plea, only when the verdict of acquittal or conviction has actually been rendered on a sufficient indictment; hence it follows, that a conviction upon an indictment defective in form, so that no judgment could be pronounced, but one of arrest, ought not to be successfully pleaded in bar of a subsequent prosecution for the same offence. Obviously, because the defendant was never in jeopardy by the first. And it follows again, that an acquittal before a tribunal not competent to try, is void, as *coram non judice,* and no bar to a second indictment for the same offence; although an acquittal by a competent jury, upon an insufficient indictment, is a finding in the last resort, which will protect the defendant against a second prosecution for the same offence. A defendant, on an insufficient indictment, may demur, and have the judgment of the court discharging him; or, if he prefers taking the chances of an acquittal, and is tried and convicted, he may be discharged on motion in arrest of judgment; but in neither event will his discharge operate as a bar to another prosecution for the same offence. The question then recurs, has the defendant, in this view of the subject, in a legal sense, been either acquitted or convicted by the verdict of a jury? This was not the argument; but it is urged, that the *nolle prosequi* and discharge of the jury, under the circumstances, were equivalent to an acquittal in judgment of law. This reason is illegal and illogical, unless it can be made to appear, either that the law officer of the State was without authority at that stage of the prosecution to quash, or, if he possessed the power, that the exercise of it, after the evidence

had closed and the arguments to the jury had been opened, operated an acquittal, which would bar a second prosecution in virtue of the constitutional prohibition cited, and the common law maxim on which it is based. From our investigation, we suppose there is no doubt, that the law officer of the State may, at any time before a defendant has actually been tried, on an application to the court, have an indictment quashed, if the prosecution is in good faith, and not instituted from malicious motives, or for the purposes of oppression ; especially, if it also appears, that the indictment is so defective in form that no judgment on conviction could be pronounced on it. Archbold, *verbo* Indictment, 7th section. And we can perceive no difference in this rule when it is applied to the right and power of the prosecuting officer to enter a *nolle prosequi*, under similar circumstances. But in either case, whether on motion to quash an indictment, or to enter a *nolle prosequi*, the presiding judge will take care to prevent abuse and oppression, by not permitting a capricious, arbitrary, or malicious exercise of the power. How then, can it be contended, that the entering of the *nolle prosequi* and the discharge of the jury have resulted in an acquittal of the defendant ? There was no verdict of guilty or of not guilty rendered in the case, and, therefore, no trial. The indictment, as the ground of the *nolle prosequi*, was averred to be insufficient; which has been repeated in the assignment of error under review. The permission of the court was obtained ; good faith, and not malice, seems to have influenced the conduct of the district attorney, and there is no alternative but the conclusion that, in a legal sense, the defendant, on the first indictment, was not in jeopardy, so as to exclude another prosecution for the same offence. In the case of *The People* v. *Olcott*, 2 Johns. Cas. 301, it was decided by Judge Kent, that " the discharge of the jury in criminal cases must rest with the judge, under all the particular or peculiar circumstances of the case ;" and in the case of *The People* v. *Goodwin*, Spencer, Ch. J., held, that " the power to discharge a jury in a criminal case, is a delicate and highly important trust, and extends as well to felonies as misdemeanors." In both of these cases the question arose, whether, after disagreement of the jury, when there was no prospect of their agreeing in a verdict, and they were, in consequence, discharged, the defendants were acquitted in law, or whether they could be re-tried. A *venire facias de novo* was awarded in both cases, and the hypothesis of an acquittal; on the ground urged, was exploded as an antiquated fiction. In further illustration, Kent holds this emphatic language ; " If the court are satisfied that the jury have made long and unavailing efforts to agree, that they are so far exhausted as to be incapable of further discussion and deliberation, *this becomes a case*

The State v. Brown.

*of necessity* and *requires interference.*" This able jurist further observes ; " *All* the authorities admit, that when any juror be= comes mentally disabled by sickness or intoxication, it is proper to discharge the jury ; and whether the mental disability be pro- duced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same." To the same end Judge Story, in *The United States* v. *Coolidge,* declares, that " the *discretion* to discharge a jury *existed in all cases ;* but that it was to be exercised only in very extraordinary and striking cir- cumstances." We conclude, therefore, that there can be but few of the profession who now advocate the heresy, that after a jury in a criminal case are once sworn, no other jury, under any pos= sible circumstances, can be lawfully sworn and charged in the same case ; although it is perfectly familiar to every lawyer, that systems of law give up their uncouth barbarisms and ",unseemly nicities" slowly and reluctantly. To sustain our opinion further, we cite a few common law authorities. Blackstone, vol. 4, p. 355, says ; " To render the plea of a former acquittal a bar, it must be a legal acquittal, by judgment upon trial, for substantially the same offence, by a verdict of a petit jury ;" and in Chitty, C. P., 376 " it is laid down, that in order to plead the plea of *auterfoits convict* with effect, the crime must be the same for which the defendant was before convicted, and the conviction must have been *lawful on a sufficient indictment ;* and that this plea, like that of a former acquittal, is of no avail when the first indictment has been quashed for invalidity, or is ultimately arrested on motion. The proceedings will be set aside and judgment of acquittal will be given ; but it will be no bar to a subsequent indictment, which the prosecutor may immediately prefer. Hawkins and Hale recognize the same doctrine ; but it is unnecessary, we presume, to multiply authorities, for we are well satisfied, that the *nolle prosequi* was right ; that the dis- charge of the jury was a discreet exercise of the powers of the court ; and that the defendant, under the first indictment was not in a legal sense, tried, and was not *legitimo modo acqui- tatus.*

This being the case, we pass to the consideration of the se- cond assignment of errors, which is, that the indictment is bad, because the negation of the truth of the defendant's alleged oath, is confined to what took place " after the assault and battery com- mitted by Peter McLoud upon the body of the late Dougald Leitch," and does not extend to or embrace any other period of time, before or after the said assault and battery by McLoud. The perjury charged in the indictment is upon that part of the oath of the defendant, where he swears, " that *shortly after* the assault and battery committed by Peter McLoud upon the body of

The State v. Brown.

the late Dougald Leitch, Martin Lawson took the said Dougald Leitch by the collar, threw him down, and kicked him," the truth of which is thus negatived ; " whereas, in truth and in fact, the said Martin Lawson, *after* the assault and battery committed by Peter McLoud upon the body of the late Dougald Leitch, did not take the said Dougald Leitch by the collar, nor throw him down, nor kick him, nor commit any battery on him." There would be irresistible force in the objection raised, if the oath on its face did not plainly show, that the only point material to the matter before the court was, the alleged violence of Martin Lawson to the person of Dougald Leitch, *after* Peter McLoud had committed the assault and battery upon the body of Leitch. This is the matter wherein the perjury is assigned, and it has been negatived as clearly as the English language has the power to do it. Proof, at the trial, that Martin Lawson did, or did not, commit violence on the person of Dougald Leitch *anterior* to the assault and battery committed by Peter McLoud was not material to the issue, and by consequence, there was no necessity that it should appear in the indictment. The perjury assigned in the oath is, that Lawson, shortly after the assault and battery of McLoud, took Leitch by the collar, &c. ; the materiality of which, in reference to the design of the oath, is to show that the injuries of Leitch, which brought him to the grave, were the result of wrongs done by Lawson, and not by Peter McLoud, who had committed an assault and battery on Leitch, and it is the falsity of the oath in this respect which constitutes the perjury. In this view we cannot think that it was essential to negative in the indictment, the idea that Martin Lawson may have committed violence on Leitch at any other time or in any other way than as it is averred.

*Judgment affirmed.*