LAND, J.
Joseph and Eddie Jeanisse and Pierre Daigle were jointly indicted for the crime of murder. They were tried, and Joseph Jeanisse and Pierre Daigle were found guilty as charged, without capital punishment, and Eddie Jeanisse was found guilty of manslaughter, and recommended to the extreme mercy of the court. Defendants filed a motion for a new trial and a motion in arrest, which were overruled. Thereupon Pierre Daigle and Joseph Jeanisse were sen- *361 fenced to imprisonment at hard labor for life, and Eddie Jeanisse to like imprisonment for five years.
Defendants have appealed, and rely for reversal on alleged informalities in the rendition of the verdict. The minute entries show that the jury—
“appeared'in open court in the custody of the sheriff, were polled, and all answered to their names, and on being asked by the court if they had agreed upon a verdict, the said jurors, through their foreman, Joseph Sarver, answered, ‘Yes,’ and delivered the following verdict, to wit:' ‘We, the said jurors, find the prisoners, Joseph Jeanisse and Pierre Daigle, guilty of murder as charged without capital punishment, and accused, Eddie Jeanisse, guilty of manslaughter, and recommended to the extreme mercy of the court, as charged against them in the bill of indictment filed against them.’ Wherefore, the said jurors being polled as to whether or not this was their verdict, and each and every one of them answered, ‘Yes, this was their verdict,’ the court ordered said verdict recorded, which was accordingly done.”
Defendants, then and there present and represented by counsel, made no objections to the rendition or recordation of the verdict.
Three days later the defendants filed a motion for a new trial on the ground that the jury had rendered two verdicts, one a written verdict,- which was never read out in open court and seems to have been lost, and the other an oral verdict, rendered by the foreman of the jury from his seat in the jury box in open court, without retiring with the jury to deliberate, and without consulting with the members of the jury.
The trial judge and the clerk were sworn as witnesses in behalf of the defendants. Prom their testimony it appears: That the judge charged the jury to bring in an oral verdict. That the jurors retired to deliberate, and after consulting together informed the sheriff that they were ready to render their verdict. That on coming into open court they were polled, and then were asked if they had arrived at a verdict. That thereupon the foreman arose from his seat and handed to the judge a slip of paper, upon which was written in pencil the following words:
“Pierre Daigle and Joseph Jeanisse, guilty of murder as charged, without capital punishment; and Eddie Jeanisse, guilty of manslaughter and strongly recommended to the mercy of the court.”
That said slip was not signed by the foreman, and the judge, after reading it, told the jury that if they wished to return a written verdict they would have to retire to their room and write one, and have it signed by the foreman in his official capacity. That thereupon they answered that they came into court to render an oral verdict and were ready to do so; and the judge told them to render the verdict orally in open court, which was done by the foreman, as shown by the minutes.
There was no essential difference between the two so-called verdicts, and the verdict as entered on the minutes was affirmed by each and every member of the jury. The unsigned writing on the slip handed to the judge was never intended as a verdict, but as a mere memorandum. The jury was charged to bring in an oral verdict, and came into court intending to render an oral verdict, and did render such a verdict, as shown by the minutes. That the writing on the slip of paper was intended as a verdict is a mere assumption, unsupported by the evidence. Counsel for defendants was present, and did not consider the incident of the slip of sufficient importance to warrant even an inquiry, to say nothing of an objection. It seems to us, under the facts and circumstances of the case, that the trial judge properly considered the writing on the slip as a mere memorandum, especially when informed that the jury intended to render a verdict ore tenus.
Surely, under the circumstances, the trial judge had the right to inquire as to the intention of the jury.
The uniform practice, where a written verdict is rendered, is to write the finding on *363 the indictment or information. It is also customary for the foreman as such to sign such a verdict. This written verdict has no legal effect until duly recorded and confirmed by the jury in open court.
Where a verdict is informal or incomplete, Bishop says:
“If the court does not interpose an objection to the verdict when rendered, the -parties should. aDd have it corrected.” Crim. Prac. (3d Ed.) vol. 1, p. 621, § 1004.
The same writer also says:
“Should a verdict be accepted from the jury so imperfect in form that there can be no judgment upon it, the consent of both parties to it will be presumed, because either was entitled to have it perfected when rendered.” Bishop, New Criminal Law, § 998.
Until the verdict is received and recorded, it is no verdict; and the jury have the right to alter it. Graham & Waterman on New Trials, vol. 3, p. 1406.
“Failure to object to a defective verdict when it is rendered waives the right to move for a venire de novo.” 12 Cyc. 701.
Defendants made no objection to the verdict as rendered, and have not been prejudiced in the least by the alleged informality, because, as a matter of fact, the verdict as rendered conformed to the finding as written on the slip of paper handed to the judge. In law, there was only one verdict rendered.
Judgment affirmed.
PRO VO STY, J., dissents.