(64 South. 411.)

No. 20,381.

STATE v. BLUE.

(Feb. 2, 1914.)

*(Syllabus by the Court.)*

**1.** CRIMINAL LAW (§§ 632, 1148*)—APPEAL—ORDER OF TRIAL—DISCRETION OF COURT.

The Supreme Court will not interfere with the order in which cases are set for trial in the district courts' where it is not shown that some law has been violated.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1447–1449, 3050–3052; Dec. Dig. §§ 632, 1148.*]

**2.** CRIMINAL LAW (§ 1152*)—APPEAL—DISCRETIONARY RULING—COMPETENCY OF JURORS.

Act No. 135 of 1898, p. 216, gives to the district judges discretion to decide upon the competency of jurors in particular cases, and this discretion will not be interfered with by the Supreme Court. State v. Kennedy, 133 La. 945, 63 South. 476; State v. Thompson, 116 La. 829, 41 South. 107; State v. Hobgood, 46 La. Ann. 855, 15 South. 406.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3053–3057; Dec. Dig. § 1152.*]

**3.** HOMICIDE (§ 300*)—SELF-DEFENSE—REFUSAL TO INSTRUCT—EVIDENCE.

The refusal of the trial judge to specially charge the jury on the matter of self-defense will not be reviewed where the per curiam of the judge shows that the evidence disclosed a case of willful murder, and self-defense was not involved.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. § 300.*]

**4.** CRIMINAL LAW (§§ 871, 875*)—VERDICT—SUFFICIENCY.

A verdict of a jury may be oral or in writing, and, if in writing, it need not be signed by the foreman, or by any one else. It must be recorded by the clerk, and read to the jury as recorded, who are then asked if that is their verdict, and, if the answer is "yea," the finding, rendering and recording is complete. Faulty spelling and surplus words in a verdict are not causes for setting it aside when the intent and meaning are clear. Marr's Crim. Juris. § 467, p. 108.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2079–2081, 2089, 2090; Dec. Dig. §§ 871, 875.*]

**5.** CRIMINAL LAW (§ 894*)—VERDICT—OBJECTION—WAIVER.

Failure to object to a defective verdict when it is rendered waives the right to move for a venire de novo. State v. Jeanisse, 126 La. 360, 51 South. 290; 12 Cyc. 701.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2115; Dec. Dig. § 894.*]

*(Additional Syllabus by Editorial Staff.)*

**6.** CRIMINAL LAW (§ 875*)—"VERDICT."

The word "verdict" is derived from the Latin "veredictum," meaning a true declaration. It is the answer of the jury made upon any cause, civil or criminal, committed by the court to their examination. It is a very important act; it is the culmination of the trial, and embodies the conclusion of the jury upon the questions of fact litigated on the trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2089, 2090; Dec. Dig. § 875.*

For other definitions, see Words and Phrases, vol. 8, pp. 7293–7295, 7827.]

**7.** CRIMINAL LAW (§ 798½*)—"As"—FORM OF VERDICT—INSTRUCTIONS.

As applied to a direction to the foreman of a jury to sign the verdict "as foreman," the word "as" is used in its ordinary sense, meaning in the character or under the name of.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1801, 1938; Dec. Dig. § 798½.*

For other definitions, see Words and Phrases, vol. 1, pp. 518–521.]

Appeal from Twenty-Fifth Judicial District Court, Parish of St. Helena; Robert S. Ellis, Judge.

Ivy Blue was convicted of manslaughter, and appeals. Affirmed.

W. T. Holland, of Greensburg, and Ponder & Ponder, of Amite, for appellant. R. G. Pleasant, Atty. Gen., and W. H. McClendon, Dist. Atty., of Amite (G. A. Gondran, of Donaldsonville, of counsel), for the State.

SOMMERVILLE, J. Defendant was charged with murder, and was found guilty of manslaughter.

The record contains 14 bills of exceptions, 4 of which have been abandoned.

Bill of exceptions No. 1:

"Be it remembered that on the trial of this case, counsel for A. L. Mulkey, together with the defendant, Mulkey, present in open court, having asked for immediate assignment and trial on a charge of perjury, wherefore coun-

sel for Ivy Blue filed a motion to set aside the fixing herein, for the reasons set forth in the motion, with the attached publications."

[1] The motion to set aside the assignment for the trial of this case was based on the allegation that on a former trial of Blue, wherein a mistrial was entered, that one of the jurors, A. L. Mulkey, had been indicted for perjury while serving as a juror in that case (State v. Blue), and that he (Mulkey) was ready and willing to go to trial on the charge against him. Defendant, Blue, further alleged that the charge against Mulkey greatly prejudiced and injured his (Blue's) case. There is no merit in the complaint. The Supreme Court will not interfere with the order of trial of cases in the district courts of the state where no law is violated.

[2] Bills of exceptions Nos. 2, 3, and 4: These bills are taken to the rulings of the court in excusing three jurors who were challenged by the state for cause. Act No. 135, 1898, p. 216, § 1, gives to the district judges the right to decide upon the competency of jurors to serve in cases before them, and their action will not be disturbed, or set aside, by this court. State v. Kennedy, 133 La. 945, 63 South. 476; State v. Thompson, 116 La. 829, 41 South. 107; State v. Hobgood, 46 La. Ann. 855, 15 South. 406.

Bills of exceptions Nos. 5 and 7: These bills relate to a question asked the prosecuting witness on cross-examination, which objection by the state was sustained. The question objected to was as follows:

"Did you not see Singleton [the deceased] have trouble with everybody that he had a settlement with?"

Defendant contends that this question was asked for the purpose of, first, corroborating the defendant that he was without fault in the matter; second, of corroborating defendant's contention that the deceased was the aggressor, and that defendant did not bring on the difficulty. The objection of the state was that the testimony was irrelevant, and the objection was properly sustained. The per curiam of the court shows that there had been a settlement between the defendant and the deceased on the Monday previous to the killing, which took place on the following Wednesday, and that the killing took place when defendant demanded the payment of a fixed balance of the account between him and the deceased of $2.65, acknowledged by the deceased to be due the defendant, and which he had agreed to pay on the following Saturday, and that it had been shown that defendant provoked the difficulty on Wednesday, and was the aggressor, and assaulted the deceased with a shotgun, demanding to be paid this balance; and, further, that the deceased had left the defendant, after having given him all the money he had in his pocket, while under the cover of the gun in defendant's hands; that the deceased and defendant had separated, going in different directions, when the deceased cursed defendant, and defendant shot the deceased with the shotgun which he was carrying; that some few of the shots entered directly behind the shoulder of the deceased, and some 50-odd struck him in the side of the face, temple, and head.

Bill of exceptions No. 6: Defendant offered to show that the wife of the deceased, Mrs. Singleton, who was dead at the time of the second trial, had not been summoned as a witness on the former trial of this defendant. Objection was made by the state on the ground of irrelevancy, and the objection was properly sustained. It does not appear in the record that Mrs. Singleton had been a witness to the killing, and no object whatever is stated by the defendant for offering this testimony.

[3] Bill of exceptions No. 10: This bill is

taken to the refusal of the judge to give a special charge to the jury referring to self-defense, in the language requested. The charge was given, but with some modification. The per curiam of the court shows that the special charge should not have been given, even in a modified form. The evidence is not before us, and the charge of the court is not in the record. But the reference hereinbefore made to the judge's per curiam, attached to several bills of exceptions, shows that:

"It was a case of willful murder."

A judge should decline to charge the law of self-defense altogether, where there is no evidence to sustain the plea, and where the evidence shows that the deceased was walking away from the defendant when he was shot and killed. State v. Guidor, 113 La. 727, 37 South. 622; State v. Erwin, 133 La. 550, 63 South. 167.

[4] Bills of exceptions Nos. 11 and 12: These bills are based upon the motions in arrest of judgment and for a new trial, which involve the form and sufficiency of the verdict in the case. The verdict is in the following words:

"We, the jurors, find the acues gilty of man-slater.                          G. W. Venables,
                          "As Forman."

Faulty spelling and the misuse of several words which are surplusage are not sufficient causes for setting aside a verdict which is clear and certain as to its meaning and intent.

[5] Besides, "failure to object to a defective verdict when it is rendered waives the right to move for a venire de novo." 12 Cyc. 701; State v. Jeanisse, 125 La. 360, 51 South. 290.

[6] The word "verdict" is derived from the Latin "veredictum," meaning a true declaration. It is the answer of the jury made upon any cause, civil or criminal, committed by the court to their examination. Whatever they sign beyond this is immaterial, and to be rejected. It is a very important act; it is the culmination of the trial, and embodies the conclusion of the jury upon the questions of fact litigated on the trial. It is the decision of the jury, and, as such, it must stand if it is clear, intelligible, and responsive to the charge.

"The verdict in a criminal case need not be in writing, or, if written, need not be signed by the foreman or any one else, for the common-law practice, which we follow, is that verdicts are delivered by some member of the jury, usually called the 'foreman,' ore tenus, recorded by the clerk, and read to the jury as recorded, who are then asked if that is their verdict, and, if the answer is 'yea,' the finding, rendering and recording is complete. * * *

"The law does not require jurors to be philologists. All that the law requires is their ability to appreciate the facts, and to apply the law. When they have done that, and expressed their sense in an intelligible and unequivocal form, the law is satisfied. Thus, 'Guilty of mansluter,' 'Guilty withoit capital purnish,' 'Guilty of burgurly,' 'Guilty of and assault by suting with intent to murder,' 'We, the jury, find the prisoner as guilty as charged,' 'Guilty as charged in both accounts,' are each equally intelligible and sufficient bases for record and judgment, and especially so when the jury, upon being polled, and the verdict correctly read to them, answered 'Yes' to the query, 'Is that your verdict?' * * *

"It does not affect the verdict that the foreman has so badly written his name that it is impossible to say whether it is Wilder or Welder, or that 'foreman' is omitted after signature, or that the word is misspelled 'for-man.' Where the foreman could not write, and the verdict was written by another member of the jury, and signed, 'Jaa Washington,' though there was on the jury no man of that name, but one named 'Jiles Washington,' it was held idem sonans, especially when the identity of the juror was not questioned, and that such irregularity was trivial and hardly worthy of notice." Marr's Crim. Juris. § 467, p. 808.

The minutes of the court in this case show that, after the jury had returned into court with its verdict, that it—

"the jury, was asked by the clerk, 'Is this this your verdict, gentlemen? so say you all?' and every one having replied in the affirmative, the court accepted the verdict, and ordered the same recorded."

The verdict of the jury having been in writing, all irregularities due to incorrect spelling of words in such verdict is cured by the clerk reading the verdict correctly, and asking each juror if that was his verdict, and by the reply of each juror that it was. State v. Wilson, 40 La. Ann. 751, 5 South. 52, 1 L. R. A. 795; State v. Smith, 33 La. Ann. 1414; State v. Ross, 32 La. Ann. 854.

There was no demand by either party in the case that the jury be polled, and the law does not require such polling of the jury. State v. Atkinson, 104 La. 570, 29 South. 279; State v. Colomb, 108 La. 253, 32 South. 351; State v. Jackson, 42 La. Ann. 1171, 8 South. 297.

The charge of the trial judge, if written, is not in the record, and is not therefore before us. It does not appear whether he directed the jury to return a written verdict or not. It is very likely that he did direct the foreman of the jury to write the verdict, and to sign the same as foreman. The word "jurors," used by the jury in the verdict, is not an essential part of the verdict, whether oral or written; it is surplusage, and need not be considered in arriving at the intention and meaning of the verdict. The same may be said with reference to the word "as," before the word "foreman."

[7] The court doubtless charged the foreman to sign the verdict "as foreman," and the foreman acted literally by putting the words "As Forman" after his name. The judge in instructing the jury, and the foreman in thus acting, used the word "as" in the ordinary sense, "in the character or under the name of." It is customary for the foreman, as such, to sign such a verdict. State v. Jeanisse, 125 La. 360, 363, 51 South. 290. The written verdict need not to have been signed by the foreman, or by any other member of the jury. 12 Cyc. 689.

As the verdict in this case is clear that the accused was found guilty of manslaughter, it must be sustained.

Judgment affirmed.

PROVOSTY, J., being absent on account of illness, takes no part.