(65 South. 904)

No. 20405.

STATE v. DUVALL et al.

(March 30, 1914. On Rehearing, June 29, 1914.)

(Syllabus by the Court.)

1. CRIMINAL LAW (§ 1152*)—APPEAL—OBJECTION BELOW—JURY.

Act No. 135 of 1898, §§ 1, 11, pp. 216, 222, confer upon district judges authority and power over juries which are to serve in their courts, and the Supreme Court will not interfere with the judges in the discharge of their duties, unless some violation of the law is shown, and it is properly excepted to at the proper time. State v. Hobgood, 46 La. Ann. 855, 15 South. 406; State v. Thompson, 116 La. 829, 41 South. 107; State v. Kennedy, 133 La. 945, 63 South. 476; State v. Blue, 134 La. 561, 64 South. 411.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3053–3057; Dec. Dig. § 1152.*]

2. CRIMINAL LAW (§§ 1037, 1171*)—APPEAL—GROUND FOR REVERSAL — IMPROPER REMARKS.

All objectionable remarks made before the jury by the prosecuting officer are not sufficient grounds for the reversal of the verdict and judgment in a case, especially where there was no objection made by counsel for the defense at the time.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1691, 2645, 3126, 3127; Dec. Dig. §§ 1037, 1171.*]

3. CRIMINAL LAW (§ 696*)—ADMISSION OF TESTIMONY—CROSS-EXAMINATION OF WITNESS.

Where the judge, sheriff, jury, the accused, and the attorneys for the state and for the defense, repair to the bedside of a sick witness, and take his testimony, the defense is not entitled to have the testimony of said witness stricken from the record on the ground that his counsel was not able to make a thorough and exhaustive cross-examination of the witness.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1639–1644; Dec. Dig. § 696.*]

4. CRIMINAL LAW (§ 1090*)—APPEAL—PRESENTATION BELOW—INSTRUCTIONS.

Where no bill of exceptions is reserved to a particular part of the charge of the trial judge to the jury, objection cannot be subsequently made thereto in the Supreme Court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2653, 2789, 2803–2822, 2825–2827, 2927, 2928, 2948, 3204; Dec. Dig. § 1090.*]

5. JURY (§ 149*) — DISCHARGE OF JUROR — RIGHT.

The trial court may discharge a juror in a capital case, without the consent of the prisoner, whenever, in its opinion, there is a manifest necessity for such discharge. State v. Robinson, 46 La. Ann. 764, 15 South. 146; State v. Richie, 3 La. Ann. 715; State v. Brown, 8 Rob. 566; U. S. v. Perez, 9 Wheat. 579, 6 L. Ed. 165; U. S. v. Gibert, 2 Sumn. 19, Fed. Cas. No. 15,204; U. S. v. Coolidge, 2 Gall. 364, Fed. Cas. No. 14,858; U. S. v. Shoemaker, 2 McLean, 114, Fed. Cas. No. 16,279; U. S. v. Morris, 1 Curt. 23, Fed. Cas. No. 15,815; Stone v. People, 2 Scam. (Ill.) 326; State v. Bell, 81 N. C. 591; Watkins v. State, 60 Ga. 601; Commonwealth v. McCormick, 130 Mass. 61, 39 Am. Rep. 423; Commonwealth v. Sholes, 13 Allen (Mass.) 554; People v. Goodwin, 18 Johns. (N. Y.) 187, 9 Am. Dec. 203; People v. Olcott, 2 Johns. Cas. (N. Y.) 301; People v. Damon, 13 Wend. 352.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. § 149.*]

6. CRIMINAL LAW (§ 162*)—FORMER JEOPARDY—CONSTRUCTION OF CONSTITUTIONAL PROVISION.

The constitutional provision, "Nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained" (Const. 1913, art. 9), is a recognition of an old maxim of the common law, and therefore resort will be had to the common law to ascertain its true meaning. State v. Robinson, 46 La. Ann. 769, 15 South. 146.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 285; Dec. Dig. § 162.*]

7. JURY (§ 149*)—DISQUALIFICATION OF JUROR—DISCHARGE.

Though neither party has a right of challenge after a juror is sworn, it is in the discretion of the court to protect the administration of justice, by investigating at any stage of the trial, an objection of impartiality of a juror, and by withdrawing the case from the jury, if any juror is found unfit to sit thereon. U. S. v. Morris, 1 Curt. 23, Fed. Cas. No. 15,-815.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. § 149.*]

8. CRIMINAL LAW (§ 182*)—FORMER JEOPARDY—WHAT CONSTITUTES.

The necessity of doing justice arising from the duty of a court to guard its administration against all fraudulent practices is an exception to the rule that a jury sworn in a capital case cannot be discharged without the prisoner's consent until they have given a verdict. Therefore, where the jury was sworn and impaneled in a trial for murder, and the court ordered a mistrial on the ground that one of the jury had fraudulently procured himself to be selected at the instance of the prisoner to secure an acquittal, there was no jeopardy. State v. Bell, 81 N. C. 591.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 330–332; Dec. Dig. § 182.*]

On Rehearing.

9. JURY (§§ 105, 149*) — DISQUALIFICATION — DISCHARGE OF JUROR—HOMICIDE.

In a case of homicide arising from an alleged seduction, a certain juror was properly removed from the panel, after the jury had been sworn, and the indictment read, on proof of recent statements by him that he would not convict any person in a case like the one at bar, and that the sister-in-law of the juror had been the victim of an alleged seduction.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 480–484, 492, 493, 515, 635–637; Dec. Dig. §§ 105, 149.*]

10. JURY (§ 149*)—SWEARING OF JURY.

Where, after the jury was sworn, one of the jurors was held to be disqualified and was removed from the panel, and the defendants thereupon moved that the remaining 11 jurors "be sworn de novo to try the case," and the court overruled the motion for the reason that the jurors had already been sworn, held, that the motion implied an acceptance of the 11 jurors, and that swearing them over again to try the case would have been an idle and useless ceremony.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. § 149.*]

*(Additional Syllabus by Editorial Staff.)*

11. CRIMINAL LAW (§ 161*)—"JEOPARDY."

"Jeopardy," as the phrase is used at common law, means nothing more than when there

has been a final verdict, either of acquittal or conviction, on an adequate indictment, the defendant cannot the second time be placed in jeopardy for the particular offense; but, as used in the constitutional provision prohibiting a defendant from being twice placed in jeopardy, it has by many respectable authorities been held to mean more than the common law means: That the accused shall not be twice tried for the same offense, and that putting him on trial merely was putting him in jeopardy of life or limb (citing Words and Phrases, vol. 4, pp. 3802–3811; vol. 8, p. 7694).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 290–303; Dec. Dig. § 161.*]

Provosty, J., dissenting.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

James Duvall was convicted of murder, Dora Murff convicted of manslaughter, and they appeal. Allie Murff was acquitted. Affirmed.

Philip S. Pugh, Percy T. Ogden, Taylor & Varnado, and Lawrence H. Pugh, all of Crowley, for appellants. R. G. Pleasant, Atty. Gen., and C. B. De Bellevue, Dist. Atty., of Crowley (L. O. Pecot, of Franklin, M. T. Gordy, Jr., of Abbeville, W. C. Baker, of Franklin, Medlenka & Bruner, of Crowley, and G. A. Gondran, of New Orleans, of counsel), for the State.

SOMMERVILLE, J. Defendants were charged with murder. James Duvall appeals from a verdict of guilty, without capital punishment; and Dora Murff appeals from a verdict of guilty of manslaughter. Allie Murff was acquitted.

The record contains forty bills of exceptions, a motion for a new trial, a motion in arrest of judgment, and an assignment of errors on the face of the record. Arguments, oral and written, were also submitted on some points not covered by bills.

[5, 7, 8] After the jury had been sworn, and the indictment had been read, the court, upon further examination, declared one of the jurors to be legally incapable and morally unfit to sit on the jury, because he had formed and expressed a determination not to find defendants guilty of the crime charged; which fact was concealed by the juror from the court and district attorney at the time that he was accepted as a juror to sit on the case; and the court discharged him; and ordered the sheriff to resummon eight detalibus jurors who had been discharged, together with seventeen other persons, to serve as tales jurors, so as to make the number twenty-five; from which number the twelfth juror was selected, to take the place of the disqualified juror, on the panel. The new juror sat with the other eleven jurors on the trial of the case. The defendants objected to the removal of the juror who had been selected and sworn, they objected to the selection of another juror to take the place of the one removed by the court, and they specially pleaded that they could not be placed in jeopardy twice for the same offense; arguing that the trial had been commenced by the reading of the indictment before the jury first selected, and that they had been thus placed in jeopardy; and that a trial before the newly formed jury was placing them twice in jeopardy, contrary to the constitutional guaranty with reference to that matter.

[1] We have recently passed upon the extent of the power and authority of district judges over petit juries, and it becomes unnecessary to repeat the rulings. Act 135, 1898, §§ 1 and 11, pages 216 and 222; State v. Hobgood, 46 La. Ann. 855, 15 South. 406; State v. Thompson, 116 La. 829, 41 South. 107; State v. Kennedy, 133 La. 945, 63 South. 476; State v. Blue, 134 La. 561, 64 South. 411.

The twelfth juror was not chosen from among the eight detalibus jurors who were resummoned after their discharge by the judge. Besides, defendants had not exhausted their challenges, so they were not in any

manner prejudiced by the rulings of the court on these matters.

[2] A bill of exceptions was reserved to a remark made by the district attorney during the examination of a witness for the defendants, as follows:

"You are an unnatural human being."

The trial judge explains that the remark was made as a simple comment on the conduct of the witness at the time of the killing. He had testified that when the shooting took place he was within a few yards, and in sight, of the tragedy, but that he stood where he was, and did not go to the place where the deceased was lying, until 15 or 20 minutes after the occurrence. We are of the opinion that the remark was not calculated to be prejudicial to the defendants.

Another bill was reserved to a remark made by one of the counsel for the state while addressing the jury, to the effect that:

"We might as well turn our parish over to assassins if these accused are not found guilty."

It appears from the statement of the judge' attached to the bill that no objection was made at the time the remark was made, and that the court was not asked to instruct the jury with reference to it. The objection comes too late, if the remark could be construed as erroneous.

[3] Other bills were taken to the admission of the testimony of a woman who was sick in bed, on the ground that defendants could not subject her to a rigid cross-examination. The record shows that the examination of the witness was entirely closed. Defendant's counsel had thoroughly cross-examined the witness and had tendered her back to the state for redirect examination. After the state had closed its redirect examination, counsel for defendants asked the witness if she was able to undergo further rigid cross-examination, when she replied that she did not think so. The record shows that de-

fendants had fully availed themselves of the cross-examination of the witness, and the refusal of the trial judge to reject the testimony was proper.

Another bill was taken to the ruling of the judge in excluding certain testimony of the defendant Dora Murff; but the bill is without merit, for the reason that Dora Murff subsequently testified in full on the point involved.

[4] The assignment of errors filed in this court has reference to a certain portion of the charge of the judge which was not objected to at the time the charge was given, when the court might have amplified, explained, or withdrawn the portion of the charge complained of. It will not be further noticed here.

[5] We come now to consider the only serious point in the case. Defendants plead that they have been twice put in jeopardy for the same offense, contrary to the guaranty of the Constitution of the United States and the Constitution of this state.

The fifth amendment to the Constitution of the United States provides:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

The state Constitution of 1864 contains a similar provision, to the effect that:

"He shall not be twice put in jeopardy for the same offense." Article 105.

The Constitution of 1868 altered the language so as to read:

"He shall not be tried twice for the same offense." Article 6.

The Constitution of 1879 amplified the language of the two prior Constitutions so as to read as follows:

"Nor shall any person be put twice in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained." Article 5.

Article 9 of the Constitutions of 1898 and 1913 are in, the same language.

It is argued on behalf of defendants that they were in jeopardy of their lives and liberty when the trial against them was begun by the impaneling and swearing of the jury, and by the reading of the indictment charging them with murder.

It is argued by the state that defendants were not put in jeopardy of their lives or liberty; as there was no legally constituted jury at the first reading of the indictment, and that the constitutional provision before quoted is a guaranty against a second legal trial for the same offense.

The question presented, as to when a person is in jeopardy before the courts, has not been directly passed upon by this court, so far as has been disclosed after a diligent search of the reports. An examination of the reports of some other states shows that there has been quite a diversity of opinion on the matter. It has been frequently held that the constitutional provisions guaranteeing a person from being twice put in jeopardy for the same offense means that a defendant, after having been tried, cannot be subjected to a second trial; and that he has not been tried when the jury has been impaneled, sworn, and charged with the disposition of the prisoner, or the indictment read to the jury; and that the defendant has not been tried until a verdict has been rendered in the case. While it has been more frequently held that one is in jeopardy when the indictment has been read by the clerk.

In State v. Robinson, 46 La. Ann. 769, 15 South. 146, where defendant was charged with larceny, it was argued that the accused had been once put in jeopardy by the impaneling of the jury, and the reading to them of the indictment, although no testimony had been adduced on that trial. At that stage of the proceeding, after reading the indictment to the jury, the state applied for a continuance because of the absence of a material witness, and the court granted the continuance, and discharged the jury. We therein sustained the plea of former jeopardy, and ordered the prisoner discharged. We considered it settled that, after a jury had been set apart and sworn for the particular case, the defendant had been conducted to a period of jeopardy, and that he was entitled to the protection of the Constitution and law when the jury was set aside against the objection, of the defendant. But we add:

"This rule is not an absolute one, and applicable to all cases alike. There are exceptional cases to which the foregoing principles do not apply; as, for instance, when there is any illegality in the composition of the jury; or a disqualified person is found on the panel; or the jury are known to have been guilty of misconduct—for any of which causes the verdict might be set aside. The rule invoked and applied in this case is that where there is a complete jury duly impaneled and sworn to try the issues joined—and to the legality of which no objection is urged—the accused is, at the moment, placed in jeopardy."

We adhere to the rulings in the Robinson Case.

The instant case falls within the exceptional cases mentioned in the foregoing opinion. An unfit person was found on the panel, and the court ordered that he should be replaced by a person properly qualified to sit on the jury.

The exceptions noted above are in line with the ruling in the case of State v. Richie, 3 La. Ann. 715, where this court remanded the first case on the ground that the special verdict of the jury in that case was insufficient to sustain a sentence; and when the case was called for trial the second time, and the defendant pleaded former jeopardy and asked for his discharge, we rendered an adverse ruling in the following language:

"The accused can only oppose a former trial in bar of a prosecution for the same offense, when it has resulted in a verdict either of acquittal or conviction, under such circumstances as would enable him to sustain the plea of autrefois acquit or autrefois convict. The first verdict was neither one of acquittal, nor of con-

viction. We held it to be insufficient to sustain a sentence, and when this occurs the accused must again be put on his trial, as though no previous trial had taken place. The effect of the new trial is merely to grant a re-examination before another jury. The authority of courts of first instance to grant new trials in criminal cases, and of the appellate court to order them, is beyond question. When ordered, the law officer of the state may proceed either upon the same indictment, or he may prefer a new bill."

In the case of State v. Brown, 8 Rob. 566, defendant was charged with perjury, and the trial had progressed until the argument was opened on the merits to the jury by the district attorney, who was followed by the attorney for the defendant. The district attorney at this stage of the proceedings discovered a flaw in the indictment, and moved the court for permission to enter a nolle prosequi, which was granted, and the jury was discharged. On the second trial, defendant pleaded former jeopardy, and asked to be discharged. The court say:

"This constitutional prohibition is a reaffirmance of a magna charta maxim of the common law, from which its true meaning has been sought by enlightened jurists, and is now settled, as we understand it, to mean only that no man shall be tried a second time for the same offense, after a trial by a competent and regular jury upon a good indictment, whether the verdict be one of acquittal or conviction. * * * What then is the test by which we must ascertain and determine whether a person has been once tried? The answer, as it appears to us, is that it can only arise on a plea of autrefois acquit, or on a plea of autrefois convict; and that autrefois acquit or convict is a good and valid plea, only when the verdict of acquittal or conviction has actually been rendered on a sufficient indictment; hence it follows that a conviction upon an indictment defective in form, so that no judgment could be pronounced, but one of arrest, ought not to be successfully pleaded in bar of a subsequent prosecution for the same offense. Obviously, because the defendant was never in jeopardy by the first. * * * It is urged that the nolle prosequi and discharge of the jury, under the circumstances, were equivalent to an acquittal in judgment of law. This reason is illegal and illogical, unless it can be made to appear, either that the law officer of the state was without authority at that stage of the prosecution to quash, or, if he possessed the power, that the exercise of it, after the evidence had closed and the arguments to the jury had been opened, operated an acquittal, which would bar a second prosecu-

tion in virtue of the constitutional prohibition cited, and the common-law maxim on which it is based. * * * There was no verdict of guilty or of not guilty rendered in the case, and therefore no trial. The indictment, as the ground of the nolle prosequi, was averred to be insufficient; which has been repeated in the assignment of error under review. The permission of the court was obtained; good faith, and not malice, seems to have influenced the conduct of the district attorney, and there is no alternative but the conclusion that, in the legal sense, the defendant, on the first indictment, was not in jeopardy, so as to exclude another prosecution for the same offense. In the case of People v. Olcott, 2 Johns. Cas. 301 [1 Am. Dec. 168], it was decided by Judge Kent that 'the discharge of the jury in criminal cases must rest with the judge, under all the particular or peculiar circumstances of the case;' and in the case of People v. Goodwin [18 Johns. (N. Y.) 187, 9 Am. Dec. 203], Spencer, C. J., held that 'the power to discharge a jury in a criminal case is a delicate and highly important trust, and extends as well to felonies as to misdemeanors.' In both of these cases the question arose whether, after the disagreement of the jury, when there was no prospect of their agreeing on a verdict, and they were, in consequence, discharged, the defendants were acquitted in law, or whether they could be retried. In further illustration, Kent holds this emphatic language: 'If the court are satisfied that the jury have made long and unavailing efforts to agree, that they are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity and requires interference.' This able jurist further observes: 'All the authorities admit that, when any juror becomes mentally disabled by sickness or intoxication, it is proper to discharge the jury; and whether the mental disability be produced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same.' To the same end Judge Story, in United States v. Coolidge [Fed. Cas. No. 14,858], declares that: 'the discretion to discharge a jury existed in all cases; but that it was to be exercised only in very extraordinary and striking circumstances.' We conclude therefore that there can be but few of the profession who now advocate the herisy that, after a jury in a criminal case are once sworn, no other jury, under any possible circumstances, can be lawfully sworn and charged in the same case; although it is perfectly familiar to every lawyer that systems of law give up their uncouth barbarisms and 'unseeming niceties' slowly and reluctantly. To sustain our opinion further, we cite a few common-law authorities. Blackstone, vol. 4, p. 355, says: 'To render the plea of a former acquittal a bar, it must be a legal acquittal, by judgment upon trial, for substantially the same offense, by a verdict of a petit jury.' * * * Hawkins and Hale recognize the same doctrine; but it is unnecessary, we presume, to multiply authorities,

for we are well satisfied that the nolle prosequi was right; that the discharge of the jury was a discreet exercise of the powers of the court; and that the defendant, under the first indictment, was not in a legal sense tried, and was not legitimo modo acquitatus."

The cases of Brown and Richie, quoted from above, were rendered prior to the adoption of the Constitution of this state in 1864, and the provision therein contained, that no one shall be twice put in jeopardy for the same offense, had reference to the jeopardy which had been formerly adjudicated upon in this state, where the pleas had been made under the amendment to the Constitution of the United States. This interpretation of the constitutional provision is clearly shown in the Constitution of 1868, art. 6, where it provides:

"He shall not be tried twice for the same offense."

And it is sanctioned by the enlarged language used in the Constitutions of 1879, 1898, and 1913. There the language necessarily embraces the idea of a trial. It says:

"Nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained."

The opinions of the court heretofore referred to, although opposed to those of many eminent courts in some of the other states, find support in the common law, and in the interpretation of the like provision by some of the states of the Union.

Greenleaf on Evidence, vol. 3 (16th Ed.) par. 37, lays down the following:

"The constitutional provision that no person shall be subject for the same offense to be twice put in jeopardy of life or limb has been variously interpreted by different tribunals; for, while some have held that it means nothing more than the common-law maxim that no man shall be tried twice for the same offense, others have held that, whenever the jury are charged with the prisoner, upon a good indictment, he is put in jeopardy."

[11] " 'Jeopardy,' as the phrase is used at common law, means nothing more than when there has been a final verdict, either of acquittal or conviction, on an adequate indictment, the defendant cannot the second time be placed in jeopardy for the particular offense; but, as used in the constitutional provision prohibiting a defendant from being twice placed in jeopardy, it has by many respectable authorities been held to mean more than the common law means: That the accused shall not be twice tried for the same offense, and that putting him on trial merely was putting him in jeopardy of life or limb." Words and Phrases, 3804.

In the case at bar the trial judge found that the jury as constituted was illegal in that a juror thereon impaneled was not morally fit to serve, because he had a fixed opinion as to the guilt or innocence of the accused; that he had been placed thereon through fraud on his part; and that the case could not be proceeded with properly and fairly for the state or for the accused. The fraud which had been practiced upon the court and the district attorney rendered the jury illegal. There arose in the mind of the judge the absolute necessity of purging the jury of the offending member, so as to enable a legally constituted jury to be drawn and sit on the case. We have reviewed the action of the trial judge, and we have concluded that the absolute necessity for removing the objectionable juror existed, and that the action of the judge was lawful and correct. The evidence clearly shows that the said juror had stated that he would not convict any person charged with the crime that the defendants were charged with. He was incapable of doing justice to the state or the accused.

If the disqualified juror had expressed a determination to find the defendants guilty, and he had sat upon the jury which found them guilty, the defendants would clearly have been entitled to another trial before another jury. An orderly administration of justice requires that the same rule should be applied to the state and to the accused, in the absence of a verdict of acquittal.

Thompson & Merriam on Juries, § 273, says:

"The court is not bound to suffer the case to proceed, after the jury have been impaneled, when informed of a fact going to the disqualification of a juror, from which it is probable that the verdict may be set aside. The obnoxious juror may be excluded, and that, too, although he has been sworn, if no evidence has been introduced. Perhaps the earliest instance of the kind is found in Clayton's Reports, where it is recorded that 'a juror was put by after he was sworn, because of kin to the plaintiff.' The views here stated, although occasionally contraverted, are sustained by an abundance of authorities. However, it is held that the sufficiency of the reasons for this exclusion will be examined on appeal, and, unless supported, the judgment will be reversed. The courts may also discharge a juror from the box, after he has been sworn, where it appears that the juror is physically unable to sit through the trial. This does not entitle the prisoner to his discharge. He should be offered his challenges over again to the eleven, and another juror procured to fill the vacancy. The withdrawal of a juror, after the trial has begun, in fact, operates as a discharged jury; but the prisoner is not entitled to complain of this, if the eleven are at once put upon him again for acceptance or rejection."

In the case of the People v. Olcott, 2 Johns. Cas. (N. Y.) 301, 1 Am. Dec. 168, Judge Kent says:

"It seems, then, that the position, generally denying the power of the court to discharge a jury sworn and charged in a criminal case, has originated (probably without further examination or inquiry) from a dictum, to be found in the Institutes of Lord Coke, and that this dictum rests upon his single authority, without the sanction of any judicial decision. None of the decisions go any further than to prescribe a rule to the discretion of the court in particular cases. On the contrary, there are many authorities admitting and establishing the power of the court to discharge the jury, even in capital cases. * * *

"The general rule, as laid down by Coke, and most of the cases on the subject, relate to trials for capital offenses, and even there we have seen how far the rule has been justly questioned, if not wholly done away; and the many exceptions which are conceded to exist against its universality."

After reviewing the early jurisprudence on the matter of conducting jury trials, and enumerating the hardships which jurors had formerly to undergo—being without meat, or drink, or candle, or rest of any kind, etc. —Judge Kent proceeds to say:

"This power in the court (to discharge a jury under certain contingencies), so far from impairing the goodness or safety of trial by jury, must add to its permanence and value. The doctrine of compelling a jury to unanimity, by the pains of hunger and fatigue, so that the verdict, in fact, be founded not on temperate discussion and clear conviction, but on strength of body, is a monstrous doctrine, that does not, as St. Germain evidently hints, stand with conscience, but is altogether repugnant to a sense of humanity and justice. A verdict of acquittal or conviction, obtained under such circumstances, can never receive the sanction of public opinion. And the practice of former times, of sending the jury in carts from one assise to another, is properly controlled by the improved manners and sentiments of the present day.

"So a verdict, obtained unfairly, by secret and artful, or bold and direct influence over the jury, by the parties, their friends, or bystanders, would, if admitted to be recorded, be a disgrace to the administration of justice. The power of discharging a jury, in these and other instances which might be enumerated, is a very salutary power, and calculated to preserve that mode of trial in its purity and vigor."

Wharton on Criminal Law, § 581, Book 1, says:

"In Massachusetts, the practice from an early period was to discharge juries at the discretion of the court, in cases both capital and otherwise. * * * 'By necessity cannot be intended that which is physical only; the cases cited are not of that sort, for there is no application of force upon the court or the jury which produced the result. It is a moral necessity, arising from the impossibility of proceeding with the cause without producing evils which ought not to be sustained." (There had been a mistrial entered on the previous trial of the defendant.)

"It is true that discretionary power in a judge is not unattended with danger; but still it must be given, and the course of justice cannot be pursued without it."

The common-law rule is laid down in 12 Cyc. 259, to be:

"It is a universally accepted principle of the common law that no person shall be placed in jeopardy more than once for the same offense. If therefore a defendant has been once fairly acquitted or convicted upon an indictment before any court of competent jurisdiction, he may plead his former acquittal or conviction in bar of a subsequent prosecution for the same offense."

"At the common law in England, if any evidence had been given, the jury could not be discharged, except in case of the most urgent necessity until they had given a verdict. The

American cases hold generally that there must be a manifest necessity for the discharge of the jury, and leave the courts to determine in their discretion whether under all the circumstances of each case such necessity exists. The power of the court to discharge a jury before verdict should be exercised only in case of a manifest, urgent, or absolute necessity. If the jury are discharged for a reason legally insufficient and without an absolute necessity for it, the discharge is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment." Page 269.

The position that being put twice in jeopardy means being tried twice is concurred in 'in the following cases: Stone v. People, 2 Scam. (Ill.) 326; State v. Bell, 81 N. C. 591; Watkins v. State, 60 Ga. 601; Commonwealth v. McCormick, 130 Mass. 61, 39 Am. Rep. 423; Commonwealth v. Sholes, 13 Allen (Mass.) 554; People v. Goodwin, 18 Johns. (N. Y.) 187, 9 Am. Dec. 203; People v. Olcott, 2 Johns. Cas. (N. Y.) 301, 1 Am. Dec. 168; People v. Damon, 13 Wend. (N. Y.) 352.

In the Supreme Court of the United States, the subject was brought up in 1824 upon a certificate of division in the opinion of the judges of the Circuit Court for the Southern District of New York. The jury had been discharged in the court below on account of a mere disagreement. The question therefore arises, was the language of the court:

"Whether the discharge of the jury by the court from giving any verdict upon the indictment, with which they were charged, without the consent of the prisoner, is a bar to any future trial for the same offense.

"If it be, then he is entitled to be discharged from custody; if not, then he ought to be held in imprisonment until such trial can be had. We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest cau-

tion, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of its discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware that there is some diversity of opinion on this subject, in the American courts; but, after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put on trial." United States v. Perez, 9 Wheat. 579, 6 L. Ed. 165.

The foregoing ruling of the Supreme Court has been followed in United States v. Gibert, 2 Sumner, 19, Fed. Cas. No. 15,204; United States v. Coolidge, 2 Gall. 364, Fed. Cas. No. 14,858; United States v. Shoemaker, 2 McLean, 114, Fed. Cas. No. 16,279; United States v. Morris, 1 Curtis, 23, Fed. Cas. No. 15,815; United States v. Haskell, 4 Wash. C. C. 409, Fed. Cas. No. 15,321.

Although the opinion herein expressed is in accord with the common law which is administered in this state and England, and is also in accord with the decisions of the Supreme Court of the United States, of the Circuit Courts of the United States, and of some of the states of the Union, the general opinion appears to be that the court has no power to discharge the jury on grounds other than on the statutory close of the term of court, sickness or death of the judge, or sickness or incapacity of witnesses, sickness or incapacity of jurors, or when a mistrial is ordered, or a new trial is granted on the application of the accused, on motion in the trial, or in the appellate, court; inability to agree on the part of the jury; or that the court was without jurisdiction.

Judgment affirmed.

### On Rehearing.

LAND, J. [9] We think that the trial judge erred in not permitting the juror Mul-

ler to testify in support of his own competency as a juror. See State v. Favre, 51 La. Ann. 434, 25 South. 93. We have, however, in the record a bill of exception which states fully the testimony which, if permitted, the juror would have given in his own behalf. This testimony does not contradict the statements made by the witnesses for the prosecution, as to Muller's declarations that he would not convict any one in a case like the one at bar, and that his sister-in-law some years ago had been seduced and had given birth to a child.

Muller would have testified "that he had expressed himself both in favor of the accused and against them having heard conflicting statements of the evidence in the case," and "that his sister-in-law had been betrayed 10 or 12 years ago, but that fact had nothing to do with the trial of the issues of this particular case," and that he could lay aside all the opinions he had formed and render an impartial verdict according to the law and the evidence.

The main witnesses for the prosecution on the trial of the motion to purge the jury were the wife and nephew of Muller, who testified positively, but with reluctance.

Only a part of Muller's examination on his voir dire was taken down. The answers as far as reduced to writing show a fair and unprejudiced juror, who, to use his own language, knew of nothing that would prevent him from rendering an impartial verdict according to the law and evidence. This same juror, a few days before he was summoned, had told his wife and nephew that he would not convict any person in a case like the one against the defendants. Muller's bias arose not merely from sympathy for the alleged victim of seduction, but from the remembrance of the betrayal of his wife's sister years before. A wrong of this kind cannot be forgotten, and naturally creates a strong prejudice against all alleged seducers, and a strong bias in favor of all women alleged to have been betrayed.

We are satisfied from the evidence in the record that Muller was morally unfit and disqualified to sit on the jury. The trial judge was unfavorably impressed with the answers of the juror, on his voir dire, and on the facts had no doubt of the juror's unfitness.

If Muller had previously expressed his intention to convict the defendants, the fact would have furnished good ground for a new trial. In reason and morals no distinction can be drawn between a juror's intent to convict and his intent to acquit the defendant, since the bias of the juror in either case disqualifies him from rendering a fair and impartial verdict.

The power of the trial judge to remove a disqualified juror is settled by the authorities cited in our original opinion as well as the rule that in such a case a plea of former jeopardy cannot be interposed.

[10] After the overruling of the plea of former jeopardy, counsel for the defendant moved:

"That the remaining 11 jurors be sworn de novo to try the case."

The court overruled the motion for the reason that each of the jurors already had been duly sworn to try the case. The defendants did not move that the 11 jurors be discharged, or that they be retendered for acceptance, or rejection, but that the jurors "be sworn de novo to try the case." The motion necessarily implied an acceptance of the 11 jurors, and we agree with the trial judge that the reswearing of said jurors would have been idle and useless ceremony.

The other points made by the defendants are fully considered in our original opinion.

It is therefore ordered that our former decree, affirming the judgment below, be reinstated and made the final judgment of the court.

O'NIELL, J., takes no part.

PROVOSTY, J., dissents, for the reason that, while the objections to the juror Muller might perhaps have been sufficient for excluding him on his voir dire, they were not so for taking him off of the jury after he had been duly accepted and jeopardy had begun.