No. 13,926.

THE STATE OF LOUISIANA VS. FRANK PROCELLA.

SYLLABUS.

1. Where the accused in a criminal trial considers that the conduct or language of the prosecuting officer is improper, he should invoke the action of the trial judge. Failing to do so, he will not be heard to complain in this court.

2. Jurors, though not permitted to impeach their own verdicts, are competent to testify in rebuttal of charges of misconduct.

3. Where there is neither bill of exception, nor assignment of errors, no alleged

error in the charge can be considered, unless, upon its face, the charge com-
plained of is glaringly unjust and erroneous.

A PPEAL from the Twelfth Judicial District, Parish of Sabine—
Lee, J.

*Walter Guion,* Attorney General, and *Amos L. Ponder,* District At-
torney, (*Lewis Guion* of counsel), for Plaintiff, Appellee.

*Don E. Sorelle,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.   The defendant, having been convicted of manslaughter,
and duly sentenced, has appealed, and presents his case to this court by
means of several bills of exception, as follows, to-wit:

Bill 1 sets forth that the district attorney, in addressing the jury
concerning the case, referred to one of the witnesses for the defense as
" an ugly, bandy-legged, knock-kneed, crooked-nosed imp of hell   *   *
*   Whereupon defendant reserved this bill to said language."

It does not appear that any action by the court was invoked and the
trial judge adds the following comment to this bill. "The district at-
" torney was criticising this witness about inducing his wife, who was
" a daughter of the deceased, to swear for the accused, and the district
" attorney, expressing himself, was a little more forcible than elegant,
" to say the least.   In fact, the argument on both sides took quite a
" wide range.   I think the accused had a fair trial."

The language used is undoubtedly open to criticism, but, as has been
said by this court in cases heretofore decided:

" Had the accused desired any action on the part of the judge, he
" should have asked it."   State vs. Mack, 45 Ann. 1155.   "To justify
" this court in setting aside the verdict of the jury, approved by the
" trial judge, on the ground of improper remarks made by a district
" attorney, it would have to be very thoroughly convinced that the jury
" was influenced by such remarks, and that they contributed to the ver-
" dict found   *   *   *   The district judge, in this case, saw the jury,
" heard what the district attorney said, and listened to all the evidence
" adduced.   If he thought that the verdict was not just, but was based
" upon prejudice resulting from anything said by the district attorney,
" we would be slow to believe that he would have overruled a motion for

" a new trial, or let the verdict stand." State vs. Johnston & Butler, 48 Ann. 90-1; State vs. Fourchy, 51 Ann. 241.

Bill No. 2 represents that as Mrs. Cole Bascus, a witness called for the defense, "was approaching the witness stand, the district attorney " began to laugh at her, and smile at, and with, the trial jury, in a man- " ner, in the judgment of the accused's counsel, as was calculated to in- " fluence the jury and to bring said witness to the stand as too con- " temptible to be worthy of belief."

The trial judge was not called upon to interfere, and adds this state- ment to the bill: " The witness came around, seemingly flustrated, or " mad, and caused some merriment, and the court rapped for order. " The jury was an extraordinarily good one, and I do not think they " were, or could be, influenced by the above occurrence."

The matter presented by the bill, under these circumstances, calls for no interference by this court.

Bill No. 3 was taken to the action of the court in overruling an ob- jection to the district attorney's exhibiting to the jury, in his closing argument, the shirt and suspenders said to have been worn by the de- ceased at the time of the homicide, said shirt and suspenders not hav- ing been referred to by him in his opening remarks, and the jury not having inspected them when the evidence was being introduced. The bill does not charge that the articles had not been offered in evidence during the trial, and it appears, affirmatively, that they had been so offered. The judge states that the district attorney was attemtping to show where the bullet entered the body of the deceased, in order that the position of the accused at the time of the shooting might be determ- ined. We find no just cause of complaint disclosed by this bill.

Bill No. 4 represents that after the defendant had closed, the district attorney called to the stand one T. I. Cranford, the foreman of a grand jury that had previously investigated the case, and had failed to indict the defendant, for the purpose of impeaching one of the defendant's witnesses, and that he produced a diagram, said to have been prepared by said Cranford, as showing the place of the killing, but which had not been offered in evidence, to the use of which defendant's counsel objected, and that the objection was sustained, but that the district attorney, nevertheless, continued to hold the diagram in his hand, in interrogating the witness, in such a manner as to attract the attention of the jury to it. The trial judge says, upon this subject: "The dia- " gram was in the hands of the district attorney, and the defendant's

" counsel objected that the jury could see it, whereupon the court in-
" structed the district attorney not to refer to the diagram, and it is my
" recollection that he then placed the same in his pocket. I do not
" think that the accused was in any way injured." And this statement
as to the facts is fully corroborated by testimony taken on the motion
for new trial.

Bill No. 5 was reserved to the overruling of the motion for new trial.
The motion in question recites the matters complained of in the bills
of exception which have been considered, and sets up the further
grounds; that the jury carried with them to the jury room the "Free
State," a newspaper published near by, which had been issued just be-
fore the jury had been empaneled and which contained an item, reading:
" Court is still in session and the law-abiding people are gratified at the
" course of proceedings up to the present time. Judge Lee seems de-
" termined to make men who defy the law to pay for it"; and that,
thereafter, the case having been submitted, the jury were brought back
from the jury room into court, where there were law books on criminal
law to which they might have access, to spend the night. The evidence
taken on the trial of the motion fails to show that there was any reading
of papers by the jury or of books other than the bible. Upon the other
hand, it does show that the night was cold; that there was no fire
place in the jury room; and that the jury was brought into the court
room after they had agreed upon their verdict, in order that the jurors
might sleep on the floor, near the fire. The judge a quo failed to find
any misconduct in what was done and properly overruled the motion.

Bill No. 6 was taken to the overruling of the objection of the defend-
ant's counsel to the admission of the testimony of several of the jurors
tending to disprove the charges of misconduct. It is settled in this
State that jurors cannot be heard, as witnesses, to impeach their own
verdicts, but we are aware of no ruling to the effect that they are in-
competent to testify in rebuttal of charges of misconduct, and the con-
trary doctrine is well established. Enc. of Pl. & Pr., Vol. 12, pp. 560.

The counsel for the defendant complains, in his brief, that the judge
a quo "failed to charge the law as to dying declarations", and "that, the
" charge is not as full as to the law of self-defense, and is fragmentary,
" charging in various places what should have been better connected",
and that "the charge in the main, is too much from the standpoint of
" the State, and comes dangerously near indicating the opinion of the
" court, and that, too, adversely to the accused."

There is no bill of exception to the charge nor assignment of errors in the record. Under these circumstances, no alleged error can be considered, unless the charge appears, upon its face, to be glaringly unjust and erroneous. State vs. Beaird, 34 Ann. 104; State vs. Curtis, 34 Ann. 1213; State vs. Ferguson, 37 Ann. 51; State vs. Melton, 37 Ann. 771; State vs. Mack, 45 Ann. 1155. The charge was reduced to writing, at the request of counsel, and appears in the record. It contains nothing in regard to dying declarations, and there is no reason, so far as we are informed, beyond the suggestion contained in the counsel's brief, why any thing should have been said upon that subject. Upon the case, as presented by the record, it seems to us to be liberal in tone, consecutive in arrangement, sound in law, and absolutely non-committal as to the views of the judge upon the subject of the guilt or innocence of the accused.

Judgment affirmed.