(68 South. 83)

No. 21060.

STATE v. POREE.

(March 8, 1915.    Rehearing Denied April 12,
1915.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞1045—APPEAL—NECES-
SITY OF RULING ON OBJECTION.

An objection to a question, where the ques-
tion remains unanswered, and where there is no
ruling of the court thereon, cannot be made the
basis of an exception, to be embraced in a bill
of exceptions.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 2652, 2685; Dec. Dig. ☞
1045.]

2. CRIMINAL LAW ☞1030, 1048, 1059—OB-
JECTION AND "EXCEPTION"—PURPOSE AND
NECESSITY.

An exception in the course of a criminal
trial serves a double purpose. It makes clear
that the party unfavorably affected by the ruling
is not satisfied, but takes issue; and it sums
up and preserves the precise term of the ruling
for purposes of appeal. There must be an objec-
tion and an exception. Both of these are in-
dispensable. Neither of them is attained by the
objection alone. And, no matter how plain
and correct the objection, the exception is still
necessary, even though the objector and exceptor
be the same party.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 2619–2621, 2632, 2653, 2656,
2657, 2670, 2671; Dec. Dig. ☞1030, 1048,
1059.

For other definitions, see Words and Phras-
es; First and Second Series, Exception.]

3. CRIMINAL LAW ☞1045 — APPEAL — RE-
MARKS OF COUNSEL—NECESSITY OF RULING.

It is the same with reference to a remark
made by the district attorney during the course
of the trial, which, though objected to, has not
been the subject of a ruling by the court.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 2652, 2685; Dec. Dig. ☞
1045.]

4. CRIMINAL LAW ☞786—TESTIMONY OF AC-
CUSED—DUTY OF JUDGE TO CHARGE.

Act No. 41 of 1904, p. 77, makes it the
duty of the trial judge to charge the jury "that,
if the person accused avails himself of this
privilege (that of being a witness for himself),
he shall be subject to all the rules that apply
to other witnesses," and that "all testimony
shall be weighed and considered according to the
general rules of evidence."

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 1787, 1895–1901, 1960, 1984;
Dec. Dig. ☞786.]

5. CRIMINAL LAW ☞822 — CHARGE TO BE
CONSTRUED AS A WHOLE.

An objection and exception reserved to one
paragraph in the charge of the court will not be
sustained when the paragraph objected to is
only a part of the law on the subject given by
the court to the jury, and where the whole
charge on that subject sufficiently covers the
law on the point.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 1990, 1991, 1994, 1995, 3158;
Dec. Dig. ☞822.]

6. CRIMINAL LAW ☞830—REFUSAL OF SPE-
CIAL CHARGES.

The refusal of the trial judge to give spe-
cial charges, where such charges are not so
worded as to cover the law applicable to the
facts of the case, or where they would have to
be corrected to be made applicable to the law
and the facts, will not be reversed.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. §§ 2012, 2017; Dec. Dig. ☞
830.]

Appeal from Criminal District Court, Par-
ish of Orleans; Frank D. Chretien, Judge.

Frederick Poree was convicted of murder,
and he appeals. Affirmed.

Henriques & Otero, of New Orleans, for ap-
pellant. Ruffin G. Pleasant, Atty. Gen., and
Chandler C. Luzenberg, Dist. Atty., and B. J.
Daly, Asst. Dist. Atty., both of New Orleans,
for the State.

SOMMERVILLE, J.    Defendant appeals
from a verdict finding him guilty of murder
without capital punishment, and from a sen-
tence condemning him to serve at hard labor
in the penitentiary for the term of his nat-
ural life.

[1] Bill of exceptions No. 1: Defendant ob-
jected to a leading question propounded by
the assistant district attorney; and, upon the
statement of the court to the effect, "I do not
see any objection to the question," he filed a
bill of exceptions. The question was not an-
swered, and no prejudice could possibly have
been done to the defendant. The assistant
district attorney did not repeat his question,
or insist upon its being answered, and it was
not answered.

Defendant made part of his bill of excep-

tions other leading questions and answers; but, inasmuch as he did not object to the questions when they were propounded, and there was no ruling made by the court on an objection, these questions and answers are not properly embraced within the bill, and they cannot be considered.

It is well settled that a party unfavorably affected by an improper question must object thereto, and invoke a ruling upon his objection, before the witness has answered the question. It is too late to object after the answer has been made. And if he fails to object and provoke a ruling of the court on his objection, he cannot reserve a bill of exceptions to be reviewed by the appellate court. There is no ruling to be reviewed.

[2] Mr. Wigmore, in his work on Evidence (volume 1, § 20), says:

"The exception serves a double purpose. It makes clear that the party unfavorably affected by the ruling is not satisfied but takes issue; and it sums up and preserves the precise terms of the ruling for the purposes of appeal. Both of these are indispensable. Neither of them is attained by the objection alone. Yet the distinction between objection and exception tends to become confused, and in judicial opinions the rules for exceptions are sometimes spoken of when the rules for objections are really being dealt with. But their functions are distinct. No matter how plain and correct the objection, the exception is still necessary, even though the objector and the exceptor be the same party."

Bill of exceptions No. 2: This bill is similar to the first. While another witness was on the stand, he was asked a direct question, which he answered; whereupon counsel for defendant said, "I raise the objection again, the district attorney must not repeat all that the witness says," and the court ruled, "I cannot see any objection to it in this instance," and a bill of exceptions was reserved. An examination of the record sustains the ruling of the court to the effect that "the question had been asked and answered before any objection was made." It was too late to object and invoke a ruling of the court after an answer had been given. It appears that the prosecuting officer repeated something which the witness had testified to in order to call the attention of the witness to the fact that he had so testified, for the purpose of taking up the examination from that point. The ruling was correct.

[3] Bill of exceptions No. 3: This bill is reserved to a remark made by the assistant district attorney under the following conditions: The witness had testified that he had received a revolver from the father of the accused, while at the home of the witness; when counsel for defendant made the following objection:

"We object on the ground that anything that the father did outside of the presence of the accused cannot be binding upon him."

Whereupon the court, addressing the jury, said:

"I charge you, gentlemen, that, unless anything that took place at that house is connected with the direct and full knowledge of the accused in this case, the testimony is not admissible. It has to be connected with him and brought to his knowledge, otherwise it is not evidence."

Thereupon the remark complained of was made, and it is as follows:

"We will connect it up; there is no doubt about its connection."

Thereupon counsel declared:

"We object to the statement of the assistant district attorney before the jury, and reserve a bill of exceptions."

Bills of exceptions can only embrace those exceptions which are reserved to the ruling or decision of a judge on the trial of a cause before him. As there was no ruling invoked by counsel for the defendant to the remark referred to, the bill of exceptions is incomplete, and cannot be considered. The trial judge made no ruling, and there is nothing before the court to be reviewed.

[4] Bill of exceptions No. 4: This bill was reserved to the following paragraph of the charge of the court, given to the jury:

"The prisoner at the bar is permitted by law to testify in his own behalf. If he exercises this privilege he is governed by the same rules, in testing his credibility and the correctness of his statements, as every other witness. You have to believe or disbelieve him just as he impresses you as to the truth and veracity of his testimony."

The charge is unobjectionable. It is in line with the law as contained in Act No. 41, 1904, p. 77, to the effect:

"That the circumstances of the witness being a party accused, or being jointly tried, shall in no wise disqualify him from testifying; that no one shall be compelled to give evidence against himself; and provided that if the person accused avails himself of this privilege, he shall be subject to all the rules that apply to other witnesses, and may be cross-examined as to all matters concerning which he gives his testimony; and provided further that his failure to testify shall not be construed for or against him, but all testimony shall be weighed and considered according to the general rules of evidence, and the trial judge shall so charge the jury."

The law makes it the duty of the judge to charge the jury that the testimony of the accused "shall be weighed and considered according to the general rules of evidence," and that is what the trial judge did, in substance, in this case.

The judge did not proceed to charge the jury that they should take into consideration the interest which the accused had in the result of the trial in considering his testimony; and the decisions in the cases of State v. Carroll, 134 La. 965, 64 South. 868, State v. Smith, 135 La. 427, 65 South. 598, and State v. King, 135 La. 117, 64 South. 1007, are without application.

[5] Bill of exceptions No. 5: This bill is to the following part of the charge of the court to the jury:

"In cases of sudden affray or conflict a homicide is not excusable on the ground of self-defense, unless the accused retreats as far as he safely can in order to avoid the violence of the deceased, and the necessity to take his life. If he fails to do this, the homicide would be manslaughter at least."

The bill proceeds to say:

"Now, be it further remembered that, the court in its general charge having presented such principles of law as heretofore recited, in order to correct the same, as will be found in the record, counsel for defendant requested the court to deliver a special charge to the jury that if the jury believe from the evidence that the accused was attacked, and if from the nature of the attack his retreat would only endanger his life, then he had a right to stand his ground and repel the assault, which was imminent, and which threatened his life and person."

The court, in its per curiam, says that:

The above-quoted paragraph "was only a part of my charge to the jury. They were charged by me that if the assault was so fierce as to endanger his life or his person by retreating, and his only safety is to kill his adversary, this he may do in defense of his person. They were also instructed that if a man who is not in fault is suddenly assaulted by another, who intends to kill him, or inflict upon him great bodily harm, he is not bound to retreat at all, but may stand his ground and kill his assailant, if there be a reasonable necessity to save his life, or to protect his person."

The statement of the judge is sustained by reference to the charge of the court as contained in the transcript. That portion of the charge not referred to in the bill is in line with the special charge asked for, and quoted above, and defendant has no ground for complaint. Several paragraphs contained in the charge to the jury, on the plea of self-defense, entirely cover the law with reference thereto.

Bill of exceptions No. 6: The court refused to give the following special charge:

"If the jury find from the evidence that the deceased threatened the accused with his life, or of doing him some great bodily harm, and that they met, and from the actions, motions, and hostile demonstrations of the deceased the accused was induced to believe, and had reasonable ground to believe, that the deceased was about to do him serious bodily harm, and was about to carry his threats into execution, the accused had a right to defend himself, even by killing his assailant, if necessary, to protect himself, and the jury should acquit, although it should afterwards appear that there was no such design on the part of the deceased."

The requested charge was refused by the judge because "there is no evidence of threats in this case."

The entire record is before the court. It therein appears that, while defendant was on the stand as a witness, he testified that he

had heard that the deceased had said that "the first time he got any of us he would pull our necks off." He was then asked from whom he had heard this, in the following question: "You did not bring all of them here to testify who told you that?" Whereupon counsel for the defendant made an objection, to the effect that the witness had not testified that his life had been threatened, using the following language:

"We object to the state cross-examining along that line; it was not brought out on the direct examination as to whether his life was threatened, and the state can only cross-examine the defendant on what has been brought out on direct examination."

Since evidence of threats was not brought out on the direct examination of the witness, there were no threats testified to, and the special charge requested was properly refused.

After stating to the trial court that there had been no evidence by defendant that his life had been threatened, defendant's counsel argue that a certain exculpatory statement made by the accused at the time of his voluntary surrender on the evening of the homicide had been introduced in evidence by the district attorney, that it contained a statement that he (the accused) had been told by some one that certain negro boys would run him (the accused) and another negro; that this negro and one of the boys had a fight; and those boys then went out where they lived and told the boys that "whenever they laid their eyes on us that they were going to kill us." But, as has just been shown, when the accused was being examined as to this or a similar statement, his counsel objected that no evidence of threats had been testified to by the accused; and the objection was sustained by the court, and no evidence was introduced along that line.

This exculpatory statement does not appear to have been offered by the prosecution to prove threats, and it does not prove threats. It is a statement of the defendant as to how the difficulty had occurred; and the state properly introduced such statement in evidence that it might be contradicted, in order to show the jury that the defendant did not give a true statement of the difficulty at the time he made it. State v. Aspara, 113 La. 940, 37 South. 883; State v. Donelon, 45 La. Ann. 744, 12 South. 922.

Counsel also refer in argument to the testimony of Green, a colored man who was in the company of the accused at the time of, or immediately preceding, the homicide. This witness testified that one or more boys said to him that they were after the accused; but it appears that he did not communicate that threat to the accused. On the contrary, he testified that the accused heard the boys, or one of the boys, say it to him immediately before the killing. It was therefore a part of the res gestæ. It was not a previous threat, communicated to the accused, who had been led to believe thereby that his life or limb might be in danger. From an examination of the record, which contains all the evidence, we conclude with the district judge that there was no evidence of threats given in the case.

[6] The special charge requested begins as follows:

"If the jury find from the evidence that the deceased threatened the accused with his life, or of doing him some great bodily harm, and that they met," etc.

It is not worded to meet the statement of facts which has been recited. The special charge requested must have been corrected to apply to the testimony adduced on the trial of the case. It is well settled that a trial judge is not compelled to give a special charge which is not so worded as to cover the testimony in, and law applicable to, the case.

Bill of exceptions No. 7: This last bill is taken to the refusal of the court to give to the jury a special charge with reference to the law of self-defense where the accused was attacked by the deceased, and that it

was not necessary for him to retreat or run from his adversary. The point is fully covered in the very complete charge of the court beginning with the words:

"If the assault is so fierce as to endanger his life or person by retreating, and his only safety is to kill his adversary, this he may do in defense of his person. But, if a man who is not at fault is suddenly assaulted by another who intends to kill him or to inflict upon him great bodily harm, he is not bound to retreat at all, but he may stand his ground and kill his assailant, if there is a reasonably apparent necessity for so doing to save his life, or to protect his person."

This portion of the charge on the law of self-defense, taken together with the other portions on the same subject-matter contained in the charge of the court, correctly gave the law of self-defense to the jury.

Judgment affirmed.