110 So.2d 521

**STATE of Louisiana**

v.

**Delbert W. EYER.**

No. 44400.

March 23, 1959.

Rehearing Denied April 27, 1959.

Gordon Goodbee, Julian J. Rodrigue, Covington, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Special Asst. Atty. Gen., James T. Burns, Dist. Atty., Covington, for appellee.

FOURNET, Chief Justice.

The accused, Delbert W. Eyer, having been convicted under an indictment returned by the St. Tammany Parish Grand Jury charging him with the murder of Mrs. Myrtle Jones Pichon, and sentenced to death, prosecutes this appeal from the verdict of the jury and the sentence of the court.

It is apt to observe that not a single bill of exceptions was reserved during the entire course of the trial. It was only after the prosecuting attorney had completed his closing argument to the jury that counsel reserved his first bill when the trial judge refused to instruct the jury to disregard the remark "you read the newspapers," attributed to the district attorney, the contention being that this statement was made during the closing argument in connection with the frequency of such crimes, and hence was prejudicial. Thereafter two additional bills were reserved, the next when the judge overruled the application for a new trial and the last when motion in arrest of judgment was denied.

In his only per curiam (which disposes of all three bills), the trial judge advises he refused to instruct the jury to disregard the remark forming the basis of the first bill for a number of reasons, i. e., (1) he recalled no reference by the district attorney during the closing argument to the frequent occurrence of such crimes—had such a remark been made, he would have been alerted and then and there instructed the jury to disregard it; (2) the state's reference to the jury reading newspapers was not made during the closing argument but some five minutes prior thereto; (3) the objection, made after the prosecuting attorney had completed his summation and resumed his seat, came too late; and (4) if made, it was not prejudicial to defendant's cause.

It is a generally recognized rule that the prosecuting attorney should be interrupted during his final summation to the jury at the moment he makes a statement defense counsel feels is improper or does some act he feels is objectionable.[1] At that time counsel for the accused, invoking a ruling or action on the part of the

1. State v. Hall, 44 La.Ann. 976, 11 So. 574; State v. High, 116 La. 79, 40 So. 538; State v. Williams, 124 La. 779, 50 So. 711; State v. Duvall, 135 La. 710, 65 So. 904, L.R.A.1916E, 1264; State v. Shoemake, 143 La. 65, 78 So. 240; State v. Dalcour, 145 La. 1008, 83 So. 223; State v. Daspit, 167 La. 53, 118 So. 690; State v. Jones, 176 La. 723, 146 So. 682; State v. Vinzant, 200 La. 301, 7 So.2d 917; State v. Willson, 215 La. 507, 41 So.2d 69; and State v. Blankenship, 231 La. 993, 93 So.2d 533.

trial judge, must point out specifically the portion of the argument objected to or the misconduct complained of and give the grounds for the objection.[2] If the ruling or action is adverse, specific exception thereto must be taken immediately and the entire matter preserved in precise terms in appropriate stenographic notations in order that it may be clear to the appellate court the exact basis for the ruling or action with which the party unfavorably affected takes issue,[3] as it is elementary that a bill of exceptions cannot be reserved, for the first time, after verdict in a motion for a new trial.[4] Furthermore, where the closing argument is not recorded as a part of the transcript of the trial, and the judge and defense counsel differ as to what was said or done during this argument that is considered improper, the statement of the

trial judge as to what occurred must be accepted as true.[5] See, generally, 5 Wharton's Criminal Law and Procedure 238, Section 2079; 23 C.J.S. Criminal Law §§ 1113, 1114, and 1115, pp. 595–599; 2 Marr's Criminal Jurisprudence 1024–1027, Section 668.

We therefore conclude that the first bill of exceptions is without merit, for clearly, according to the version of the trial judge as to what transpired, there was no error committed in his ruling. Moreover, if the statement be indeed objectionable, as contended by counsel for the accused, he has not shown in what manner the statement could have influenced or prejudiced the jury in arriving at its verdict, or that it contributed to the verdict found.[6] In fact, his only argument on

---

2. State v. Briscoe, 30 La.Ann. 433; State v. Mack, 45 La.Ann. 1155, 14 So. 141; State v. Procella, 105 La. 518, 29 So. 967; and State v. Vinzant, 200 La. 301, 7 So.2d 917.

3. State ex rel. Gaines v. Judge, 12 La. Ann. 113; State v. Gunter, 30 La.Ann. 536; State v. Jefferson, 43 La.Ann. 995, 10 So. 199; State v. Johnson, 48 La.Ann. 87, 19 So. 213; State v. Young, 114 La. 686, 38 So. 517; State v. Spurling, 115 La. 789, 40 So. 167; State v. Cunningham, 123 La. 867, 49 So. 601; State v. Washington, 124 La. 708, 50 So. 660; State v. Parker, 125 La. 565, 51 So. 590; State v. Johnson, 127 La. 458, 53 So. 702; State v. Poree, 136 La. 939, 68 So. 83; State v. Genna, 163 La. 701, 112 So. 655; State v. Glauson, 165 La. 270, 280, 115 So. 484; State v. Cullens, 168 La. 976, 123 So. 645; State v. Henry, 200 La. 875, 9 So.2d 215; State v. Leming, 217

La. 257, 46 So.2d 262. See, also, 1 Wigmore on Evidence 353, Section 20.

4. State v. Lemodelio, 23 La.Ann. 16; State v. Slutz, 106 La. 637, 31 So. 179; State v. Daspit, 167 La. 53, 118 So. 690; State v. Goury, 184 La. 955, 168 So. 113; State v. Neal, 231 La. 1048, 93 So.2d 554.

5. State v. Young, 114 La. 686, 38 So. 517; State v. Robertson, 133 La. 806, 63 So. 363; State v. Hoover, 203 La. 181, 13 So. 2d 784; State v. McLean, 211 La. 413, 30 So.2d 187; State v. Hilaire, 216 La. 972, 45 So.2d 360; State v. Delatte, 219 La. 715, 53 So.2d 906.

6. State v. Johnson, 48 La.Ann. 87, 19 So. 213; State v. Young, 114 La. 686, 38 So. 517; State v. Johnson, 127 La. 458, 53 So. 702; State v. Shoemake, 143 La. 65, 78 So. 240; State v. Dalcour, 234 La. 145, 99 So.2d 62; State v. Stahl, 145 La. 1008, 83 So. 223; State v. Brazile, 236 La. 362, 107 So.2d 670.

this point is found in his brief under the heading "Assignment of Errors" and is simply that "Defendant-appellant assigns said remark as prejudicial error to the defendant, warranting reversal," the remainder of the argument there being devoted to the next two bills.

Although the second bill, reserved when the trial judge overruled the application for a new trial, was originally composed of three parts,[7] two of these have apparently been abandoned inasmuch as defense argument is predicated only on the first, i. e., "That the verdict is contrary to the law and the evidence." Ordinarily this would present nothing for our review. However, counsel argue that an examination of the entire transcript, which has been attached for our review in connection with this bill, reveals nothing was missing from the store where the crime occurred and, more particularly, from the cash register, which was not even opened, and he could not, therefore, be guilty of the crime charged inasmuch as he was advised, in response to a request for particulars, the state intended to prove he "killed the deceased while engaged in perpetration of armed robbery." Though somewhat obscure, counsels' point seems to be that once the accused is informed in response to a request for particulars that he is charged with killing the person named while engaged in the "perpetration" of armed robbery, the state could not thereafter introduce evidence on the trial of the case to show that he was engaged in an "attempted" perpetration of armed robbery, as perpetration, under dictionary definition, means a completed or accomplished act.

There is no merit to this ingenuous and novel argument. As just pointed out, the accused was advised the state intended to prove he killed the deceased while *"engaged in perpetration of armed robbery,"* and reference to Webster's New International Dictionary (Second Edition) reflects that the word "engage" used in this sense means "to embark in a business; to take a part; to employ or involve oneself; * * * To enter into conflict; * * * to become involved or entangled." It is obvious, therefore, that the state, by the use of this language, did not restrict its proof to the establishment of the fact that a robbery had actually occurred. There can be no question but that counsel for the accused understood the information furnished by

---

7. As originally drawn this motion complained that (1) the verdict was contrary to the law and the evidence; (2) new evidence was discovered in the way of scissors taken from the scene of the crime for fingerprinting but never introduced in evidence; and (3) the fact that one of the jurors was sleeping during the course of the trial. The hearing had on this motion, as well as the judge's per curiam reflective thereof, so completely refute the last two contentions it is obvious why they have been abandoned.

the state conveyed this meaning since no objection was offered to any of the evidence introduced during the trial, and this contention is not specifically alleged or pleaded in the application for a new trial.

■ The record unmistakably shows that the accused entered the Mid City Five and Ten Cent Store in Slidell, Louisiana, armed with a deadly weapon for the ostensible purpose of committing robbery. While denying he shot Mrs. Pichon through the back of the head, the accused admitted, during testimony given in his own behalf: "I pulled out the pistol and hit her on the head and the gun went off at the same time." His testimony following this admission seems to imply he did not remember just what happened next, but he did admit he was conscious of the fact that the body, lying where it fell near the entrance in front of a counter running from the front to the rear of the store for a distance of some 42 feet, could be seen from the street, and to prevent this he dragged it the length of the counter and left it behind the counter in the rear.

However, the record shows that while Mrs. Pichon did suffer a fracture of the right front skull, she was also shot with a bullet that entered the lower left side of the back of her head and came out near the front right temple. It was conceded by counsel for the accused that the bullet found on the floor some 8 or 10 feet toward the rear from where Mrs. Pichon fell was fired from a 22 caliber Beretta gun with which the accused admittedly armed himself before he entered the store,[8] and which he threw under a house in the vicinity as he fled the scene in a panic when he realized he had done wrong, it being recovered later and produced at the trial,[9]

8. The accused testified he left Crowley, Louisiana, on Friday night, June 20, 1958, with a load of rice he was to deliver in four days in Jacksonville, Florida, having in his possession some $82, $75 of which was advanced him to cover expenses of the trip and the remainder already being in his possession. Running low on gas in the truck-trailer that had a 120-gallon capacity, and realizing he did not have sufficient to enable him to reach the Trailways truck stop at the Louisiana-Mississippi state line, some eight miles distant, he pulled into Slidell, Louisiana, on Monday morning, June 23, with only about $2.00 in his pocket, the greater part of the remainder having been dissipated playing pin ball machines at various stops between Crowley and Slidell. Parking the truck on a side street in the business district and taking with him a 22 caliber Beretta pistol, he went into a number of places, the last being the Mid City Five and Ten Cent Store, where Mrs. Pichon was on duty.

9. Five bullets were found remaining in the pistol, which the court has ascertained holds 10 bullets in the clip. The accused also admitted he threw from the truck in his flight the bloody handkerchief with which he kept his face covered as he fled the scene, and the plaid shirt he had been wearing, which he changed in the truck as he drove. Both of these were recovered from the roadside where he threw them and were produced at the trial.

along with the ejected shell which was found the next day on the top of the display counter near the bullet.

And while the accused denied he entered the store for the purpose of committing robbery,[10] the record shows that an effort was made to open the cash register through the manipulation of a combination of keys, and when this proved unsuccessful, that an attempt had been made to forcibly open the cash register with two different pairs of scissors, one of which, with points broken off that were found in the drawer of the cash register, was on the floor next to the cash register (removed from the counter where it was ordinarily kept and placed on the floor behind the counter) and the other, which was bent, on the counter itself.

The basis for the motion in arrest of judgment, upon which the first bill is predicated, is that inasmuch as the indictment under which the accused was charged was in the short form provided in RS 15:-235, it is unconstitutional. Counsel, relying on State v. Straughan, 229 La. 1036, 87 So. 2d 523, 528, argue here, both orally and in brief, that such short forms are in violation of Sections 2,[11] 9,[12] and 10 [13] of Article I of the Constitution of 1921 of the State of Louisiana, and the Constitution of the United States, particularly the 5th,[14] 6th,[15] and 14th [16] amendments.

The Straughan case does not support the defense contention. On the contrary, it recognizes a long line of decisions of this court which hold that the short forms set out in RS 15:235 for charging such well-defined crimes as murder, theft, simple and aggravated rape, etc., meet the generally accepted test for constitutional sufficiency.[17] The Straughan case is only au-

---

10. Although he consistently denied he owned a gun, had been in the Mid City store on June 23, or killed Mrs. Pichon until he took the stand, the version given by him then was that he was killing time in the store while waiting to find a wholesaler who would buy some of the rice and thus provide the funds to make it possible for him to continue the trip to Florida; that he became infuriated when Mrs. Pichon, trying to make him leave the store where loafers were not allowed, called him "boy" and shoved him, and hit her on the head, the gun discharging.

11. "No person shall be deprived of life, liberty or property, except by due process of law."

12. "Prosecution shall be by indictment or information * * *."

13. "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him * * *."

14. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *."

15. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * * and to be informed of the nature and cause of the accusation."

16. "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

17. State v. Ward, 208 La. 56, 22 So.2d 740; State v. Chanet, 209 La. 410, 24 So.2d 670; State v. Nichols, 216 La. 622, 44 So. 2d 318; State v. Leming, 217 La. 257,

thority for the proposition that the amendment to this section by the 1944 legislature, which sought to permit the state thereunder to charge an accused in either an indictment or information by "using the name and article number of the offense committed," was unconstitutional.

■ In connection with this bill counsel argue, further, that inasmuch as the district attorney, in answer to the request for particulars, informed the accused he was charged with murdering Mrs. Pichon "while engaged in perpetration of armed robbery," he committed reversible error patent on the face of the record when, during his opening statement to the jury, he informed them the accused was being tried under a charge that he "committed this murder while *attempting* armed robbery," and, again, that the homicide was committed "during the *course* of armed robbery." Not only was no objection made to these statements at the time they were made, which is required as pointed out under our disposition of the first bill, and no such contention made in the lower court in the motion in arrest of judgment, but a similar, if not identical, argument was advanced in connection with the second bill of exceptions and the ruling which disposes of that bill controls.

For the reasons assigned, the conviction and sentence are affirmed.

46 So.2d 262; State v. Holmes, 223 La. 397, 65 So.2d 890; State v. Scott, 223 La. 769, 66 So.2d 802; State v. Elias, 234

La. 1, 99 So.2d 1, and the authorities therein cited.