169 So.2d 909

**STATE of Louisiana**

v.

**N. J. ODOM.**

**No. 47243.**

Dec. 14, 1964.

Paul C. Tate, Tate & Tate, Mamou, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. Y. Fontenot, Dist. Atty., Morgan J. Goudeau III, Asst. Dist. Atty., for appellee.

McCALEB, Justice.

Appellant was charged by bill of information with violating R.S. 14:67.1, in that he did, on or about July 3, 1963, "* * * misappropriate and take one head of cattle, property of Sidney Guillory, without the consent of the said Sidney Guillory, with intent to deprive the said Sidney Guillory permanently of the said head of cattle."

After a trial, during the course of which 28 Bills of Exceptions were taken, appellant was found guilty and sentenced to serve seven years at hard labor in the State Penitentiary. On this appeal, reliance is had on 22[1] of the 28 bills reserved by appellant for a reversal of the conviction.

Bill No. 7 was taken to the overruling of a motion to quash the bill of information on the ground that it is insufficient to charge any crime known to Louisiana law. This bill is to be considered with Bill No. 6, which was reserved to the overruling of appellant's objection to being forced to undergo trial, as it likewise is grounded upon the claimed invalidity of the bill of information. The predicate of appellant's argument under these bills is that the charge is too indefinite to comply with the requirements of Section 10 of Article 1 of our Constitution—that the accused in all criminal prosecutions shall be informed of the nature and cause of the accusation against him—in that it merely states that he took "one head of cattle". This charge, defense counsel claim, does not constitute a sufficient description of the animal taken, since even the short form provided by R.S. 15:235 for theft of cattle, horses, sheep, goats, etc., requires that the animal taken be described in the bill.

We find no merit in the contention. Appellant has been charged in the language of the statute which adequately describes the offense under which the prosecution is brought and, hence, satisfies the constitu-

1. Bills Nos. 4, 5 and 23 were not perfected and Bills Nos. 1, 8 and 26 have been abandoned.

tional guarantee that the accused be informed of the nature and cause of the accusation. R.S. 14:67.1 declares, in substance, that the theft of cattle, horses, mules, sheep, hogs or goats is the misappropriation or taking of such cattle, or other named animals belonging to another "* * * either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations." And it further provides that an intent to deprive the owner of the animal or animals described therein permanently is an essential element of the crime.

■ Appellant, as we have stated, is charged in the language of the statute and this is wholly sufficient to comply with the law—for Article 227 of the Code of Criminal Procedure (R.S. 15:227), while declaring that the indictment must state every fact and circumstance necessary to constitute the offense, further provides "* * but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used." The rule is well settled that an indictment charging an offense in the language of the statute defining it is sufficient. State v. Scheuering, 226 La. 660, 76 So.2d 921; State v. Kershaw, 234 La. 579, 100 So.2d 873. The exception to this rule is that, where a statute characterizes the offense in general or generic terms an

information charging the offense in the words of the statute is insufficient and the specific facts on which the charge is based must be set out therein. State v. Blanchard, 226 La. 1082, 78 So.2d 181, citing State v. Varnado (on rehearing) 208 La. 319, 368, 23 So.2d 106 and other authorities.

Since R.S. 14:67.1 defines the offense of theft of animals named therein with precision, the charge couched in the language of the statute is sufficient.

We are not impressed with the argument of defense counsel that, inasmuch as the short form provided for by R.S. 15:235 for charging theft of cattle and other animals requires a description of the animal or animals stolen, the failure to give a detailed description of the animal taken, when charging in the language of the statute, is fatal to the information.

■ The charge of the theft of "one head of cattle", whether under the short or long form, amply describes the thing taken, as "cattle", in law, designates specifically that class of animal belonging to the bovine species as distinguished from the other animals named in R.S. 14:67.1. It is not essential that the gender of the animal be named or markings or other detailed description be given. Such information may be secured by the accused (as it was in this case) by a request for a bill of particulars.

Bill of Exceptions No. 3 was reserved when the judge overruled a written plea styled "Plea of Constitutionality" which was filed in limine by defense counsel. This plea assails the validity of two sections of the Code of Criminal Procedure, R.S. 15:-432 and R.S. 15:13. It is professed that R.S. 15:432, providing certain enumerated legal presumptions existing in criminal cases which may be destroyed by rebutting evidence and includes the presumption that "the person in the unexplained possession of property recently stolen is the thief", violates the State and Federal Constitutions in that it deprives the accused of due process and a fair trial by establishing such a presumption of guilt for the crime of theft and further because it is vague, indefinite and ambiguous.

■ The answer to this plea is that it was premature. Appellant was without interest to question the constitutionality of any legal presumption set forth in the procedural statute (R.S. 15:432) unless and until the prosecution attempted to employ the provision against him.

■ According to the judge's per curiam to this bill, the State did not rely upon the legal presumption of which counsel makes complaint and, therefore, he suffered no injury. In any case, the attack is patently without merit. It is well settled that statutes providing for legal rebuttable presumptions do not violate any constitutional guar-

antees of an accused. See State v. Nix, 211 La. 865, 31 So.2d 1, which contains a full discussion of the authorities on this subject.

■ Insofar as appellant's plea assails the constitutionality of R.S. 15:13, it is difficult to perceive the basis on which it is founded. R.S. 15:13 merely tracks in part those provisions of Section 9 of Article 1 of our Constitution declaring "All trials shall take place in the parish in which the offense was committed, unless the venue be changed; * * *". Thus, the question of venue in a criminal case is one of fact.

■ The theory of defense counsel seems to be that, if the judge should hold that the evidence established venue in St. Landry Parish because appellant possessed the cow there, this would render R.S. 15:13 invalid. For our part, we fail to discern how or why such a finding would affect the *constitutionality* of the statute.

Bills Nos. 2, 15–B and 25 have been grouped by defense counsel as relating to each other and we shall endeavor to thus consider them.

Bill No. 2 was reserved to the overruling of appellant's exception of venue and it is his counsel's contention that the evidence taken on the hearing of the exception does not show that the theft was committed in St. Landry Parish.

 The contention is not well founded. The owner of the cow, Sidney Guillory, a resident of Acadia Parish, testified that he brought the animal with 18 or 20 other head to a pasture in St. Landry Parish in March or April, 1963, and that, sometime in June of 1963, he noticed that the subject cow was missing, together with six other head belonging to him. This evidence, which was not rebutted, is sufficient to establish that the cow was taken or misappropriated in St. Landry Parish.

When the State's witness, Otis Boudreau, took the stand for the purpose of showing that appellant sold the cow, which he was accused of stealing, at the stockyard in Opelousas, defense counsel objected to the production of the records on the ground that the State had not yet proven the corpus delicti, i. e.; that the animal had been stolen. The objection was overruled and counsel reserved Bill No. 15–B.

 The bill is not meritorious. R. S. 15:368, while recognizing the general rule that no party can be controlled in the order in which he shall introduce his proof, provides that an exception exists whenever the evidence sought to be elicited requires the laying of a foundation for its admission. The evidence tendered did not require a foundation (proof of corpus delicti) for its admission. On the contrary, it is well settled that it is not essential for the State to prove the corpus delicti as a condition precedent to the introduction of other evidence to connect the accused with the crime charged, the time and order of receiving testimony being controlled to a large extent by the discretion of the trial judge. See State v. Gebbia, 121 La. 1083, 47 So. 32; State v. Hill, 135 La. 625, 65 So. 763; State v. Gani, 157 La. 235, 102 So. 319 and State v. Courtney, 170 La. 314, 127 So. 735.

Bill No. 25 was reserved to the denial of appellant's motion for a new trial and his supplemental motion for a new trial. The motion for a new trial was based on four grounds—(1) that the verdict was contrary to the law and the evidence, which presents nothing for review; (2) that the bills of exceptions reserved showed commissions of prejudicial error, which is a repetition of the arguments made separately on the several bills of exceptions; (3) that the State waived reliance on the legal presumption of guilt set forth in R.S. 15:432 and, subsequently, altered its position by arguing the legal presumption to the jury, and (4) that there is no evidence in the record to support the jury's verdict of guilty, which presents nothing for review since appellant " * * * did not allege what essential element or elements of the crime were not supported by proof." State v. Bueche, 243 La. 160, 142 So.2d 381.

Under this grouping of bills, defense counsel only argue in detail the third

ground of the motion for a new trial relative to the alleged change of position by the prosecutor in subsequently stressing the presumption of guilt by possession set forth in R.S. 15:432. It is asserted by counsel that the prosecutor, in arguing to the jury, made it clear that he was relying on the legal presumption that a person in the unexplained possession of property recently stolen is the thief.

The contention is not well taken. In the first place, it does not appear from the record that defense counsel objected to the part or parts of the prosecutor's argument to the jury which are now claimed to be inconsistent with the waiver of the legal presumption. If counsel thought that the argument was improper, they were required to object at the time the remarks were made and the complaint comes too late when first made in a motion for a new trial. R.S. 15:502 declares: "No error, not patent on the face of the record, can be availed of after verdict, unless objection shall have been made at the time of the happening of such error and unless at the time of the ruling on the objection a bill of exceptions shall have been reserved to such adverse ruling."

Furthermore, a reading of the alleged objectionable remarks to the effect that, if appellant had obtained the cow legitimately he would have produced witnesses to prove where he had obtained it,

merely evinces that the prosecutor was arguing the circumstances of unexplained possession and sale of the stolen cow as evidentiary facts showing that appellant was the thief. This was perfectly legitimate argument for, although the State was unquestionably relying upon the circumstances of appellant's possession and sale of the stolen cow as proof that he was the thief, the prosecutor did not at any time infrom the jury, nor did he request the court to instruct the jury, that a legal presumption resulted from such unexplained possession and, if the evidence showed that he possessed under these circumstances, then the *law* presumed he was the thief.

Under this same heading, which defense counsel have labelled "Section III" of their brief, argument is made that their supplemental motion for a new trial is well founded. The supplemental motion is based on the notion that the trial should have been recessed by the judge because, during its progress, the news of President Kennedy's assassination was announced. Since defense counsel failed to move for a continuance or recess of the trial, they are hardly in a position to claim at this time that the judge should have recessed the trial ex proprio motu. Undoubtedly, counsel must have felt that at that time the news of the President's death did not adversely affect appellant's chances for an acquittal and the latter cannot be permitted to thus

speculate and then belatedly claim that the judge should have nevertheless stopped the proceedings.

■ Indeed, in urging this contention on appeal, counsel apparently overlook the nature and scope of our jurisdiction in a criminal case, which is to correct errors of law patent on the face of the record and those contained in properly perfected bills of exceptions grounded on objections made to the ruling of the court on some purely incidental question arising during the progress of the cause. See R.S. 15:500.

■ Bill of Exceptions No. 24 was reserved to the overruling of appellant's objection to a statement by the prosecutor during the course of his argument which, defense counsel contend, constituted a comment on the failure of appellant to testify in his own behalf. According to the perfected bill, the objectional statement of the prosecutor was that " * * * if you intend to do something, that is in your mind. If you do not tell someone that 'I intend to do this', how do they know what the intent is, save and except that after it is done, or whatever you do, you have to show intent unless he tells you the intent, or by the facts surrounding, or the circumstances surrounding the matter?"

We fail to perceive in what respect the foregoing statement, which was manifestly an argument on proof of intent, constituted either directly or by innuendo a comment on appellant's failure to testify. Actually, it appears from defense counsel's brief here that they have abandoned the basis on which this bill is predicated and they now argue that the prosecutor made other comments during the course of his argument to the jury which indirectly referred to appellant's failure to take the stand.

■ The alleged improper statements of which counsel now complain cannot be considered, as counsel failed to object at the time the statements were made. Hence, since the judge had no opportunity to rule on whether the statements were comments on the appellant's failure to testify, there is no legal error presented for review. R.S. 15:502, 510; State v. Neal, 231 La. 1048, 93 So.2d 554; State v. Eyer, 237 La. 45, 110 So.2d 521 and authorities there cited.

Bills Nos. 16, 17 and 18 were taken to the overruling of three motions for a mistrial during the redirect examination of a State witness by the district attorney.

■ We find the motions insubstantial. They refer simply to evidence given by the witness that appellant was in the Acadia Parish jail when he made a certain statement to the witness. Defense counsel have projected from this evidence and an accompanying statement of the district attorney (that the State had the right to prove similar acts for the purpose of establishing intent) the occurrence of prejudicial error. We think that the trial judge properly dis-

posed of the contention in his per curiam when he stated:

"On cross-examination of the witness by the defendant's counsel, he elicited testimony that the witness had discussed certain matters with defendant in the Acadia Parish jail, and counsel did not object to the answer of the witness, nor did he request that the answer be stricken from the record. Since this was a matter brought out on cross-examination, the State had a right to pursue the matter on re-direct examination. Although the matter was not pursued any further by the State, on a motion for a mistrial the District Attorney simply explained that as a matter of law similar offenses are admissible to show intent, but there was nothing in the record to show that the accused was in jail in Acadia Parish for a similar offense, and in the Court's opinion he wasn't prejudiced by the re-direct examination on the question of the whereabouts of the conversation between the witness and the defendant."

Bills Nos. 19, 20, 21 and 22 were reserved to the overruling of defense counsel's objections to the introduction in evidence of the State's exhibits 2, 8, 4 and 9.

■ When Gene Bibbs (a truck driver and cattle checker at Brown-Alsbrooks Stockyards) was testifying, he was handed two slips in his handwriting, one showing that one head of cattle, No. 188, was received from appellant and the other showing that one head of cattle, No. 187, was received from Alvin Rougeau. Both slips were dated July 3, 1963 and, when Bibbs testified that appellant instructed him as to the names to be put on the two slips, they were offered in evidence. Defense counsel's objection to the offer was overruled and Bill No. 19 was reserved.

The objection, which was based on irrelevancy because the slips neither showed color of the cows nor the brand of the animals, has no substance. The exhibits were clearly admissible to show that, on the date in question, appellant had requested the witness to issue two receipts for the two head of cattle he delivered to the stockyard.

■ Bill No. 20 was taken to the introduction of State exhibits Nos. 4 and 9, the first being the check issued appellant by the stockyard for the sale of the stolen cow and cashed by him, and the other being a copy of the original check. Counsel's objection is that the checks were inadmissible because the bookkeeper and custodian of records for Brown-Alsbrooks Stockyard, who identified the checks, did not know of his own knowledge that they were accurate.

We find no merit in the bill. The judge states in his per curiam that the record

shows that the bookkeeper and custodian of the stockyards properly identified the checks and counsel makes no showing to the contrary.

■ The same ruling is applicable to Bill No. 21, which was reserved to the overruling of appellant's objection to the introduction of State Exhibit No. 10 which is a bill of sale of cow No. 188 to a Mr. Venable. The bookkeeper of the stockyards testified regarding the issuance of this bill of sale and Venable, the purchaser, likewise identified it.

■ Bill No. 22 was reserved to the overruling of appellant's objection to the introduction of State Exhibit No. 11, which is the branding iron used by Guillory, the owner of the stolen cow, who testified that the cow was branded with that particular iron. The objection, which we find untenable, is that, since the cow had not been shown to the jury at that particular stage of the proceedings (after the State had rested its case) it was inadmissible.

We fail to see why the iron was not admissible in view of the fact that the owner of the cow had identified the iron as the one used to brand that cow.

Bills Nos. 9 and 10 were reserved when the judge maintained the State's objection to the following questions propounded by defense counsel to prospective juror, Sam Cantana, on his voir dire examination:

"Q. Have you ever suspected that any one was stealing cattle from you?"

"Q. Have you ever heard of any cattle rustling in your neighborhood?"

In sustaining the objections the judge stated that, while counsel had the right to determine whether the jurors are prejudiced, the questions went beyond the scope of proper voir dire examination.

R.S. 15:349 states that examination of prospective jurors shall be conducted in the manner now provided by existing laws. R. S. 15:357 declares that the purpose of examination of jurors is to ascertain their qualifications in the trial of the case in which they have been tendered "and the examination shall be limited to that purpose".

In State v. Henry, 196 La. 217, 198 So. 910, the Court, citing Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054, 73 A.L.R. 1203, observed that, while the trial judge is granted latitude as to the questions which may or may not be answered on a voir dire examination, this discretion is subject to essential demands of fairness and that the examination " * * * cannot be limited so as to destroy or impair the constitutional and statutory rights of challenge for cause and peremptory challenge" See also State v. Brazile, 229 La. 600, 86 So.2d 208 and

State v. Hills, (on rehearing) 241 La. 345, 129 So.2d 12.

The judge states in his per curiam to these bills "the record will disclose" that counsel were granted wide latitude in the examination of jurors on their voir dire. Inasmuch as the transcript of the juror's entire voir dire examination has not been annexed to and made part of the bills, it is impossible for us to ascertain the extent to which defense counsel were limited in questioning the prospective juror for the purpose of securing information as to his qualifications, so that appellant could intelligently exercise his challenges, the peremptory, as well as those for cause. Accordingly, when the judge tells us in his per curiam that counsel were given much latitude in the voir dire examination, we must assume that they were permitted to fully explore all facts which might enlighten them as to the juror's mental attitude towards appellant and to the crime with which he was charged.

 The question propounded by counsel as to whether the juror had heard of any cattle rustling in his neighborhood was patently extraneous to a determination of his qualifications and we think the judge properly sustained the State's objection for that reason alone. And the other question, as to whether the juror ever suspected that anyone was stealing cattle from him, was also improper in the absence of a showing (which the record does not reveal) that the juror was a cattle owner and had lost cattle or had been the victim of cattle theft.

Bills Nos. 11, 12, 13, 14 and 15 have reference to the alleged improper admission of evidence submitted by the State as to the identity of the brand used by Guillory, the owner of the stolen cow.

 Bill No. 11 was taken to the overruling of appellant's objection to interrogation of Guillory anent the identity of his cattle brand. The objection was grounded on the fact that the brand was not registered until after the commission of the theft and, hence, was not entitled to recognition under the Louisiana Brand Law. The law provides, in part (see R.S. 3:743), that in any suit or criminal proceeding at which title to animals is at issue, a certified copy of the recorded brand shall be prima facie evidence of the ownership of the animal by the person whose brand or mark it may be.

There is no merit in the bill. The trial judge correctly concluded in his per curiam: "* * * the law does not require nor provide that the brand of an animal must be registered before it can be identified as the brand of the owner of the allegedly stolen animal. * * *" It would be fatuous to say that, because the owner has not registered the brand of his cattle, the State would be precluded from proving owner-

ship of the stolen cow or that it bore a certain brand.

■ During the examination of State witness, Dallas Manuel, a member of the Livestock Brand Commission, he was permitted to testify over objection that he was contacted relative to the missing cattle of Guillory and that he went to see Guillory who showed him a picture of his (Guillory's) cattle brand; that he checked the records at the stockyards to ascertain if any cattle were sold with this brand and that the records revealed that one black muley cow with this brand was sold by appellant. Counsel then reserved Bill No. 12, based on the ground that the best evidence were the records themselves.

The bill has no substance. The short answer, among others, is that, since the records were subsequently admitted in evidence, appellant has not been prejudiced by the testimony.

■ Bill No. 13 falls in the same category as Bill No. 11. It was taken to the overruling of an objection to the introduction in evidence of the brand certificate of Sidney Guillory showing registration of his brand on the date after the alleged theft of the cow. This evidence merely showed that the brand had been registered, thus confirming other evidence to that effect.

■ Bill No. 14 was taken to the overruling of appellant's objection to the intro-

duction of evidence pertaining to the brand certificate on the ground that the facsimile did not correspond to that furnished in the bill of particulars.

The objection was not well taken for, as stated by the judge in his per curiam, the question of whether or not the brand offered corresponded to that furnished in the bill of particulars was for the jury to determine.

■ Bill No. 15 falls in the same category as Bill No. 11. It was taken during the examination of State witness, Dallas Manuel, when, over objection, evidence was adduced to the effect that the branding iron corresponded to the brand on the cow. The objection was founded on the ground that the best evidence concerning the brand on the cow was the cow itself. Since the jury viewed the cow it is difficult to see that appellant was prejudiced but, in any case, the evidence was clearly admissible as Manuel had seen the cow and the brand and, therefore, was fully qualified to testify to the fact whether the brand and the mark on the cow were the same.

Bill No. 15–A has not been argued or briefed. It was taken to the introduction, over objection, of a copy of the Brand Commission's records which was objected to on the ground that the witness who testified and identified the records stated that it was not an exact copy but a certificate of a facsimile record filed in his office.

Suffice it to say that the bill is inconsequential for it is difficult to see in what respect appellant was prejudiced by the admission of the alleged illegal document in evidence.

The conviction and sentence are affirmed.

170 So.2d 1